IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2007 OCT 23 ⊃ 3: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| WYATT FINCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:07cv952 - MHT |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| DONNY HOLLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF REMOVAL

COME NOW Defendants, State Farm Fire and Casualty Company (hereinafter "State Farm Fire") and Donny Holley (hereinafter "Holley") and give notice of removal of the above-styled action from the Circuit Court of Chambers County, Alabama, to the United States District Court for the Middle District of Alabama, Eastern Division. As grounds for the removal of this action, Defendants aver the following:

1.    Upon information and belief Plaintiff, Wyatt Finch, Jr.,  was and is a citizen of the State of Alabama residing in Chambers County, Alabama.

2.    Defendant State Farm Fire and Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with its principal place

of business in the State of Illinois. Defendant State Farm Fire is a citizen of the State of Illinois.

3.    Defendant Donny Holley is a citizen of the State of Alabama residing in Chambers County, Alabama. Defendants, however, contend that Holley was fraudulently joined to this action. The Complaint filed by Plaintiff alleges claims for breach of contract and bad faith against State Farm and negligent and wanton failure to procure insurance against Holley. Plaintiff has demanded compensatory and punitive damages. Defendants have filed contemporaneously with this Notice of Removal, a motion to dismiss filed by Defendant Donny Holley for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). A copy of said motion is incorporated herein by reference as Exhibit "A." Defendant Holley should be dismissed as a matter of law, therefore maintaining the requirement of diversity of citizenship pursuant to 28 U.S.C. § 1441. The Eleventh Circuit has recognized that a defendant has been fraudulently joined if there is no possibility the plaintiff can prove any cause of action against the resident under prevailing law. *Cabalceta v. Standard Fruit Co.*, 883 F. 2d 1553, 1556 (11th Cir. 1989); *Insigna v. LaBella*, 845 F. 2d 249, 254 (11th Cir. 1989). The determination of whether the resident defendant has been fraudulently joined is made based upon the plaintiff's pleadings at the time of removal. *Id.*; see also *Pullman Co. v. Jenkins*, 305 U.S. 534 537; 59 S.Ct. 347, 359;

83 L.Ed. 334 (1939). The District Court can consider submitted affidavits, deposition transcripts and other evidence to determine whether fraudulent joinder has occurred. *Coker v. Amoco Oil. Co.*, 709 F. 2d 1433, 1440 (11th Cir. 1983).

4.    Defendant Holley was served on September 24, 2007, and State Farm Fire was served on September 25, 2007. Plaintiff's Complaint alleges claims for breach of contract and bad faith against State Farm and negligent and wanton failure to procure insurance against Donny Holley. A copy of the Complaint is attached hereto as Exhibit "B."

5.    Other than the filing of the Complaint identified as Exhibit "B," and the discovery that was served with the Complaint, a copy of which forms composite Exhibit "C," no other proceedings have taken place in state court as to the subject matter of Exhibit "B."

6.    This action is subject to removal on the basis of diversity of citizenship in that Plaintiff was and is a resident and citizen of the State of Alabama and Defendant State Farm Fire and Casualty Company is a corporation with its principal place of business in the State of Illinois.

7.    Defendants maintain that removal of the action initiated by Plaintiff is justified. This is a separate and independent claim which would be removable on its own right. See *Motor Vehicle Cas. Co. v. Russian River County Sanitation Dist.*, 538

-3-

F. Supp. 488 (D.C. Cal. 1981). The action being removed is removable due to diversity based on 28 U.S.C. § 1441 (a).

8.    In addition to diversity of citizenship among the real and proper parties to this cause, this Court has jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. § 1441, in that there is a sufficient basis that the jurisdictional amount in controversy could possibly be met. In his Complaint, Plaintiff seeks an undetermined amount in damages, however, Plaintiff alleges State Farm has failed and/or refused to pay for the damage that was incurred by wind and hail at paragraph 11 of the Complaint. Though not specifically addressing a specified amount in the Complaint, it is clear that Plaintiff is seeking benefits under his policy of insurance, mental anguish and punitive damages.

9.    In *De Aguilar v. Boeing Co.,* 11 F. 3d 55 (5th Cir. 1993), the court held that "[w]hen the plaintiff's complaint does not allege a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $50,000 [$75,000]. *Id.* at 58. (emphasis added) (citations omitted). In determining whether the requisite amount in controversy exists to support federal jurisdiction, it is well settled that "the defendant bears the burden, albeit the light burden, of showing that the required amount is in controversy. To do so, defendants must show only that it does not appear to a legal certainty that the

-4-

claim is for less than the jurisdictional amount." *Locklear v. State Farm Mut. Automobile Ins. Co.,* 742 F. Supp. 679, 680 (S.D. Ga. 1989 (citing *St. Paul mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)). (emphasis added)., 5 F. 3d 81, 84 (5th Cir. 1993). This analysis comports with the preponderance of evidence standard put forth in *De Agilar, supra.*

10.     Plaintiff's Complaint is "indeterminate" because Plaintiff does not set forth the amount of a compensatory damage claim and the issue of removal is determined on the basis of the Complaint before the court at the time of the removal. *Cabalceta v. Standard Fruit Co.,* 883 F. 2d 1553, 1561 (11th Cir. 1989). "'An indeterminate complaint does not show that the case is not removable. It simply does not comment on federal jurisdiction.' *Robinson v. Quality Ins. Co.*, 633 F. Supp. 572, 574 (S.D. Ala. 1986). In such cases, the Court has the 'duty to independently determine the propriety of jurisdiction.' *Id.* at 575."

11.     Further, when the Court must determine whether the amount in controversy has been met for jurisdictional purposes, "the court must consider a claim for punitive damages "unless it is apparent to a legal certainty that such cannot be recovered."" *Lowe's OK'd Used Cars, Inc. v. Acceptance, Ins. Co.,* 995 F.Supp. 1388, 1389 (M.D. Ala. 1998)(citing *Holley Equipment Co. v. Credit Alliance Corp.,* 821 F.2d 1531 (11th Cir. 1987). Again, State Farm in no way concedes the fact that

any wrong was committed, or that punitive damages are even appropriate in this case, (and, in fact, State Farm denies same.)  However, it is plausible that a punitive damage award combined with the compensatory damage relief sought by Plaintiff could indeed exceed the jurisdictional amount.  A copy of a recent judgment from the same county with the same attorney for the plaintiff, the same defense attorney and State Farm Life Insurance Company is attached as Exhibit "D."  This judgment clearly shows a compensatory award well under the jurisdictional amount, when combined with punitive damages in Chambers County, Alabama, can and most likely will result in an amount which far exceeds $75,000.

12.    If the above is reviewed *in toto*, Defendants avers that they have met the evidentiary burden set forth in *Lowe's* requiring that a "defendant may only establish removal jurisdiction by showing to a 'legal certainty that the plaintiff would not recover less than the federal jurisdictional amount if the plaintiff prevailed.'" *Id.* at 1389.

13.    This petition is filed with this Court within 30 days of service of process on these Defendants.

14.    This Court has original jurisdiction of the above-entitled action pursuant to 28 U.S.C. §1332, and since Defendant State Farm Fire is not a resident citizen of the State of Alabama, wherein the above-entitled action is pending, removal of this

action to this Court is proper pursuant to 28 U.S.C. § 1441.

15.    Notice of the Defendants' removal of the above-styled action has been given to the Clerk of the Circuit Court of Chambers County, Alabama, and to the Plaintiff, as required by 28 U.S.C. § 1446(d). See Exhibit "E" attached hereto.

WHEREFORE, Defendants have removed this action from the Circuit Court of Chambers County, Alabama, to the United States District Court for the Middle District of Alabama, Eastern Division.

_____
**JAMES H. ANDERSON [AND021]**
**MICHEAL S. JACKSON [JAC015]**
Counsel for Defendant State Farm Fire and
Casualty Company


**Of Counsel:**

**BEERS, ANDERSON, JACKSON,**
 **PATTY, & FAWAL, P.C.**
P. O. Box 1988
Montgomery, Alabama 36102-1988
Tel: (334) 834-5311 / Fax: (334) 834-5362

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by depositing a copy of same in the U.S. Mail, postage prepaid, addressed as follows:

Nick Wooten, Esq.  
**WOOTEN LAW FIRM, P.C.**  
P. O. Drawer 290  
Lafayette, AL 35862

David Hodge , Esq.  
**PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.**  
1100 Park Place Tower  
2001 Park Place North  
Birmingham, Alabama 35203

on this the 23rd day of October, 2007.

Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WYATT FINCH,          )
                            )
      Plaintiff,       )
                            )
vs.                  )    Case No. _____
                            )
STATE FARM FIRE AND    )
CASUALTY COMPANY,    )
DONNY HOLLEY, et al.,    )
                            )
      Defendants.     )

## DEFENDANT DONNY HOLLEY'S MOTION TO DISMISS

COMES NOW Defendant (Donny Holley)and moves this Court to dismiss

Count Three of Plaintiff's Complaint[1] pursuant to Rule 12(b)(6), *Federal Rules of*

*Civil Procedure.* Count Three of Plaintiff's Complaint fails to state a claim against

Holley upon which relief can be granted. Plaintiff can prove no set of facts in support

of any allegation set forth in Count Three of the Complaint that would entitle him to

relief against Holley. In support thereof, Defendant Holley states as follows:

## INTRODUCTION

Plaintiff's Complaint arises from his submission of a claim to State Farm Fire

and Casualty Company regarding storm damage to his home. Plaintiff's Complaint

---

[1] Count Three is the only Count of the Complaint asserted against Holley.

EXHIBIT
A

PENGAD 800-631-6989

alleges Defendant Holley negligently or wantonly procured the policy of insurance

on Plaintiff's home.  Plaintiff's Complaint also alleges breach of contract and bad

faith against Defendant State Farm.  As will be demonstrated below, even when this

allegation is viewed most strongly in Plaintiff's favor, Defendant Holley  contends

that there is no circumstance which would entitle Plaintiff to relief.

## II. ARGUMENT

### A.    MOTION TO DISMISS STANDARD

On May 21, 2007, the United States Supreme Court issued *Bell Atlantic v.*

*Twombly*, 550 U.S. _____(2007), 127 S.Ct. 1955, 2007 WL 1461066 (U.S.),

effectively redefining the standard for a Rule 12(b)(6) Motion to Dismiss.  Prior to

*Twombly*, the standard for analyzing a motion to dismiss was set forth in *Conley v.*

*Gibson*, 355 U.S. 42(1957). *Conley* stated that  "[a] complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 45-46. In *Twombly*, the Court revisited *Conley* and set forth the following

standard for motions to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations ... a
> plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires  more  than labels  and
> conclusions, and a formulaic recitation of the elements of

> the cause of action will not do ... Factual allegations must
> be enough to raise a right to relief above the speculative
> level ... on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 1964-68.  The Court further noted that the plaintiff must

present plausible grounds to state a claim for relief, specifically stating that

"something beyond a mere possibility of loss causation" must be pled to satisfy Rule

8. *Id.* at 1968-69 (citing *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336 (2005)).

Even though *Twombly* was an anti-trust case, the Court expressly rejected the

previous "no set of facts" standard enumerated by *Conley*, *supra*, a labor law case,

thereby suggesting this new standard for deciding motions to dismiss is applicable to

all cases, not merely those sounding in anti-trust. The Court's earlier standard was

more generous to the plaintiff in that a Motion to Dismiss would only be granted if

"no set of facts" could support a plaintiff's claims.   The emphasis on the "no set of

facts" language encouraged denial of a motion to dismiss on any facts presented by

a plaintiffs regardless of their implausibility. In discrediting the *Conley* opinion

Justice Souter wrote:

> [T]here is no need to pile up further citations that Conley's
> 'no set of facts' language has been questioned, criticized
> and explained away long enough .... [A]fter puzzling the
> profession for 50 years, this famous observation has earned
> its retirement. The phrase is best forgotten as an
> incomplete, negative gloss on an accepted pleading

> standard: once a claim has been stated adequately, it may
> be supported by any set of facts consistent with the
> allegations in the complaint... Conley, then, described the
> breadth of opportunity to prove what an adequate
> complaint claims, not the minimum standard of adequate
> pleading to govern a complaint's survival.

*Id.* at 1969.   *Twombly* did not seek to heighten the pleading standards but required

"only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Because the Plaintiff in this case has failed to plead his claims against Defendant

Holley "across the line from conceivable to plausible", the allegations against Holley

are due to be dismissed. *Id.* at 1974.

**B.     ALLEGATIONS AGAINST HOLLEY**

A review of all the allegations against Holley in Plaintiff's Complaint reveals

why the Complaint fails to state a claim against Holley.  First,  Plaintiff asserts

Defendant Holley procured a homeowner's insurance policy for Plaintiff's home and

that State Farm issued the homeowners policy which specifically provided coverage

for wind and/or hail damage. (Complaint, ¶ 6).  These assertions confirm Plaintiff

wanted a policy which provided coverage for wind and/or hail damage, that

Defendant Holley procured said policy and that State Farm indeed issued said policy

to Plaintiff.  Plaintiff then claims  in Count Three that Defendant Holley negligently

or wantonly procured the policy of insurance because State Farm did not pay for wind

-4-

and hail damage but Holley informed Plaintiff the policy he purchased provided coverage for wind and/or hail. Since Plaintiff desired a homeowners policy which provided coverage for wind and/or hail damage and Defendant Holley procured a homeowners policy for Plaintiff which provided said coverage, Defendant Holley was not negligent or wanton in the procurement of the policy. The State Farm homeowners policy issued to Plaintiff specifically provides coverage for the accidental direct physical loss to the insured property which includes wind and/or hail damage:[2]

## SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

(Exhibit "A," p. 7). Since Defendant Holley procured the exact policy Plaintiff requested then Plaintiff has wholly failed to assert a plausible claim of negligent or wanton procurement against Defendant Holley.

Plaintiff appears to suggest in his Complaint that because State Farm allegedly

---

[2] Attached as Exhibit "A" is a copy of Plaintiff's homeowners policy. The attachment of said policy declaration page to this motion to dismiss does not convert said motion into a motion for summary judgment. *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F.Supp. 1393, 1397 (N.D. Ala. 1997). *See also Holyfield v. Moates*, 565 So.2d 186 (Ala. 1990).

denied his claim for wind and/or hail damage then the only reason for said denial was because the policy did not provide coverage for said type of loss; i.e. Holley negligently or wantonly procured his policy. (Complaint, ¶ 17) To the contrary, as set forth in the policy language above, the Plaintiff's policy of insurance does provide insurance benefits for wind and/or hail damage if that type of loss actually occurred. State Farm's alleged denial of Plaintiff's insurance claim does not automatically equate to negligent or wanton procurement on the part of Holley. Based on the plain language of the Complaint, Plaintiff has failed to assert a plausible claim of negligent or wanton procurement.

The Court in *Twombly* was clear that the new standard now requires the trial court to consider the likelihood of the allegations, to not only weigh the allegations against the law, but also against logic. *See generally Twombly*. The new standard requires the Court to determine whether enough facts have been stated in the Plaintiff's Complaint to conclude that it is plausible that the Plaintiff is entitled to relief, not merely that relief is remotely possible. *Id.* at 1968 - 1969. In the case sub judice, Plaintiff's allegations fail to present plausible evidence to even suggest why he is entitled to relief. While Plaintiff may argue his claim against Holley is remotely possible, the claim is wholly implausible, thereby warranting dismissal under the newly established standard set forth in *Twombly*. "When the allegations in a

-6-

complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be ... exposed at the point of minimum expenditure of time and money by the parties and the Court.'" *Id.* at 1966.   Count Three  of Plaintiff's Complaint against Defendant Holley should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiff's  claims  against  Defendant  Holley  for  negligent  or  wanton procurement are due to  be dismissed as the Complaint shows on its face that Holley in fact procured a policy which covers wind and hail damage, and, therefore, cannot be liable for negligent failure to procure.  Plaintiff's Complaint does not allege that State Farm denied the claim because there was wind and hail and that the policy does not cover wind and hail.  The fact State Farm denied the claim -- if it did -- does not change the policy terms and does not remove coverage for wind and hail from the policy. The denial -- if it happened -- subjects State Farm to an action for breach of contract and, if warranted, bad faith; but the denial -- if it happened -- does not

subject Holley to an action for negligent/wanton failure to procure when the policy

clearly provides that coverage.  Therefore, Holley is due to be dismissed.


**JAMES H. ANDERSON [AND021]**
**MICHEAL S. JACKSON [JAC015]**
Attorneys for Donny Holley


**OF COUNSEL:**

BEERS, ANDERSON, JACKSON,
  PATTY & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama  36102-1988
(334) 834-5311
(334) 834-5362 fax

-8-

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by depositing a copy of same in the U.S. Mail, postage prepaid, addressed as follows:

Nick Wooten
WOOTEN LAW FIRM, P.C.
P. O. Drawer 290
Lafayette, AL 35862

David Hodge
PITTMAN, HOOKS, DUTTON, KIRBY
 & HELLUMS, P.C.
1100 Park Place Tower, 2001 Park Place
N.
Birmingham, Alabama 35203

on this the ___23rd___ day of October, 2007.

OF COUNSEL

**State Farm Fire and Casualty Company**

Home Office, Bloomington, Illinois 61710



**Birmingham Operations Center**
100 State Farm Parkway
P.O. Box 2661
Birmingham, Alabama 35297-0001

## CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the
records pertaining to the issuance of policies issued by the
Personal Lines Division of State Farm Fire & Casualty Company,
a stock company with home offices in Bloomington, Illinois.

Based on our available records, I further certify that the attached
coverage summary dated OCT 17, 2005 represents a true copy of
the policy provisions and coverages as of NOV 30, 2005 for policy
01-B5-3572-8 issued to    FINCH, WYATT JR
                          25 GAYLOR ST
                          VALLEY AL  36854-4322

*Bill Lovell*

Bill Lovell
Underwriting Section Manager
State Farm Fire & Casualty Company
Birmingham Operation Center
Birmingham AL  35297-0001

EXHIBIT
"A"
PENGAD-Bayonne, N.J.

**SF- Finch**
SF-00063

STATE FARM INSURANCE COMPANIES®

State Farm Fire and Casualty Company

100 State Farm Parkway
Birmingham, AL 35297-0001

B-09- 1520-F282  F H

FINCH, WYATT JR
25 GAYLOR ST
VALLEY AL  36854-4322

| RENEWAL CERTIFICATE | |
| --- | --- |
| POLICY NUMBER | 01-B5-3572-8 |
| Homeowners Policy | |
| NOV 30 2005  to  NOV 30 2006 | |
| DATE DUE | PLEASE PAY THIS AMOUNT |
| BILLED THROUGH SEPP | |

**Coverages and Limits**
**Section I**

| | | |
| --- | --- | --- |
| A | Dwelling | $164,000 |
| | Dwelling Extension      Up To | 16,400 |
| B | Personal Property | 123,000 |
| C | Loss of Use | Actual Loss Sustained |

**Deductibles - Section I**

| | |
| --- | --- |
| Other Losses | 1,000 |
| Except 5% Earthquake | |

Location:  Same as Mailing Address

SFPP No: 0041406409

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Section II**

| | | |
| --- | --- | --- |
| L | Personal Liability | $300,000 |
| | Damage to Property of Others | 500 |
| M | Medical Payments to Others (Each Person) | 5,000 |

**Forms, Options, and Endorsements**

| | |
| --- | --- |
| Homeowners Policy | FP-7955 |
| Ordinance/Law 10%/ $16,400 | OPT  OL |
| Increase Dwlg up to $32,800 | OPT  ID |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Amendatory Endorsement | FE-7201.2 |
| Earthquake Endorsement | FE-7301.4 |
| Policy Endorsement | FE-5320 |
| Fungus (Including Mold) Excl | FE-5398 |
| Motor Vehicle Endorsement | FE-5452 |
| Amend Subrogation Condition | FE-5843 |

**Annual Premium**                                $1,096.00

**Premium Reductions**
Your premium has already been reduced
by the following:
    Claim Free Discount                          232.00

Inflation Coverage Index:   194.8

131-2388 6.1 Rev. 05-2000  Printed in U.S.A.

SF- Finch
SF-00064

38 3335 9092

*Thanks for letting us serve you.  We appreciate our long term customers.*
DONNY HOLLEY
(334) 644-2111                          Prepared  OCT 17 2005

See reverse side for important information.
Please keep this part for your record.

---

STATE FARM INSURANCE

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT    B-1520-F282  F

| INSURED | FINCH, WYATT JR | |
| --- | --- | --- |
| POLICY NUMBER | 01-B5-3572-8 | HO - HOMEOWNERS |

NOTE: DO NOT PAY - PREMIUM BILLED
THROUGH STATE FARM PAYMENT PLAN.

| DATE DUE | PLEASE PAY THIS AMOUNT |
| --- | --- |
| | THIS IS FOR INFORMATION ONLY |

Please contact your State Farm
Agent to make any policy
changes.

0909512301
State Farm Insurance Companies

138-30797.5 (Rev. 02-2001) Printed in U.S.A. (07/00810)

FOR OFFICE USE ONLY          4976          201    I
Prepared  OCT 17 2005
N   1V,3A,HU

REP         FIRE BEN                          1230

000536400000000    401101253572801509>

**CONTINUED FROM FRONT**

lortgagee:    COLONIAL BANK NA
              ITS SUCCESSORS AND/OR ASSIGNS

**Your coverage amount....**

It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an estimate from Xactware, Inc. using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

**Discounts and Rating** - The longer you are insured with State Farm, and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for rating in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plans are based on the number of years you have been insured with State Farm and on the number of claims that we consider for rating. Depending on the Plan(s) that applies in your state/province, claims considered for rating generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for rating, please contact your State Farm agent.

Rev. 01-13-2004    (o13207ba)

**NOTICE TO POLICYHOLDER:**

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes requested before the "Date Prepared", which appear on this notice, are effective on the Renewal Date of this policy unless otherwise indicated by a separate endorsement, binder, or amended declarations. Any coverage forms attached to this notice are also effective on the Renewal Date of this policy.

Policy changes requested after the "Date Prepared" will be sent to you as an amended declarations or as an endorsement to your policy. Billing for any additional premium for such changes will be mailed at a later date.

If, during the past year, you've acquired any valuable property items, made any improvements to insured property, or have any questions about your insurance coverage, contact your State Farm agent.

Please keep this with your policy.

(o1f008qf) Rev. 10-2003    (o1f313a)

| IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT. IF THIS IS NOT CONVENIENT, PLEASE COMPLETE THE FOLLOWING. |
|---|

Street or R.R. _____    Residence Phone No. _____

City _____    State/Province _____    ZIP/Postal Code _____    Business Phone No. _____

Township _____    County _____    ☐ Inside City Limits    ☐ Outside City Limits

s change:    ☐ Permanent    ☐ Temporary    If temporary, how many months? _____    Do you plan to return to your previous address?    ☐ Yes    ☐ No

☐ Mailing address change only    ☐ Location change (Please see your State Farm agent)    ☐ Check box if change applies to ALL State Farm policies in household.

'Auto Policyholders Only)

Is the vehicle driven to and from work/school?    ☐ Yes    ☐ No

If the answer is "yes", what is the average weekly mileage for such use? _____

(o1f008qf)

SF- Finch

SF-00065



STATE FARM INSURANCE COMPANIES
State Farm Fire and Casualty Company
100 State Farm Parkway
Birmingham, AL 35297-0001

B-09- 1520-F282 F  H

POLICY NUMBER    01-B5-3572-8

**HOMEOWNERS AVAILABLE COVERAGE NOTICE**

DATE DUE         PLEASE PAY THIS AMOUNT
**SEE RENEWAL CERTIFICATE**

FINCH, WYATT JR
25 GAYLOR ST
VALLEY AL  36854-4322

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET.  THE FOLLOWING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL NOTICE.  PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Back-Up of Sewer or Drain (for damage caused by water from outside the plumbing system which backs up through sewers or drains)

Building Ordinance or Law (higher limits)

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical workers)

Child Care Liability (for those providing child care in their home)

Firearms (for broadened coverage and higher limits)

Home Computers (for higher limits)

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

**This notice contains only a general description of the coverages and is not a contract.  All coverages are subject to the provisions in the policy itself.**  Should you have a need for any of these coverages or higher limits, contact your State Farm Agent to discuss details, cost and eligibility.
*Special Notice*
*If you have a need for Flood Insurance, contact your agent to determine if you are eligible for coverage through the National Flood Insurance Program.  A separate application is required.*

DONNY HOLLEY
(334) 644-2111

*Please keep this part for your record.*
Prepared      OCT 17 2005

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT

DATE DUE      PLEASE PAY THIS AMOUNT
**SEE RENEWAL CERTIFICATE**

SEE RENEWAL CERTIFICATE FOR PREMIUM NOTICE

**SF- Finch**
SF-00066

6180689R  Rev. 02-2001

FOR OFFICE USE ONLY    4975
Prepared  OCT 17 2005
N   1V,3A,HU

REP

FE-7201.2
(10/97)

# AMENDATORY ENDORSEMENT
## (Alabama)

**SECTION I - CONDITIONS**

**Suit Against Us:** Reference to "one year" is changed to "six years".

**SECTION I AND SECTION II - CONDITIONS**

**Right to Inspect** is added:

**Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

d. warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Joint and Individual Interests** is added:

**Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

All other policy provisions apply.

**SF- Finch**

SF-00067

FE-7201.2
(10/97)

Printed in U.S.A.

FE-7301.4
(7/00)

# EARTHQUAKE AND VOLCANIC EXPLOSION ENDORSEMENT

1. **SECTION I - LOSSES NOT INSURED** references to earthquake and volcanic explosion are deleted. Such insurance as is afforded by Section I of the policy is extended to insure for accidental direct physical loss caused by earthquake or volcanic explosion.

2. We do not insure under this endorsement for loss caused by or resulting from any earthquake or volcanic explosion that begins before the inception of this endorsement.

   But, if this endorsement replaces earthquake insurance that excludes loss that occurs after the expiration of the policy, we will pay for loss or damage by earthquake, or volcanic explosion that occurs on or after the inception of this endorsement, if the series of earthquake shocks or volcanic explosions began within 72 hours prior to the inception of this insurance.

3. All earthquake shocks or volcanic explosions that occur within any 72-hour period will constitute a single loss. The expiration of this policy will not reduce the 72-hour period.

4. **Deductible:** The deductible for loss caused by earthquake or volcanic explosion is the amount determined by applying the deductible percentage (%) shown in the **Declarations**, separately, to each of the following:

   a. the total **COVERAGE A - DWELLING** limit shown in the **Declarations**;

   b. the total **DWELLING EXTENSION** limit shown in the **Declarations**; and

   c. the total **COVERAGE B - PERSONAL PROPERTY** limit shown in the **Declarations**.

   We will pay only that portion of the loss which exceeds the separate deductibles calculated above. The minimum deductible for each occurrence is $250.

All other policy provisions apply.

**SF- Finch**
SF-00068

FE-7301.4
(7/00)

Printed in U.S.A.

POLICY ENDORSEMENT

SECTION I AND SECTION II - CONDITIONS

The following condition is added:

**Premium.** The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

All other policy provisions apply.

FE-5320
(4/99)

SF- Finch
SF-00069

FE-5398

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

The following definition is added:

"fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES INSURED**

Item 12.d. is replaced with the following:

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced with the following:

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

**SECTION I - LOSSES NOT INSURED**

Item 1.l. is replaced with the following:

l. wet or dry rot;

In Item 2., the following is added as item g.:

g. Fungus. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

(2) any remediation of fungus, including the cost to:

(a) remove the fungus from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the fungus; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

FE-5398

Printed in U.S.A.



**SF- Finch**
SF-00070

FE-5452

# MOTOR VEHICLE ENDORSEMENT

## DEFINITIONS

The definition of "motor vehicle" is replaced by the following:

"motor vehicle", when used in Section II of this policy, means:

a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational vehicle" while off an insured location. "Recreational vehicle", means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device;

d. a "locomotive" while off an insured location. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an insured;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an insured while off an insured location;

f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

g. the following are not motor vehicles:

(1) a motorized land vehicle in dead storage on an insured location;

(2) a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

(3) a motorized golf cart while used for golfing purposes;

(4) a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration;

h. "leased" does not include temporary rental.

All other policy provisions apply.

FE-5452

**SF- Finch**

SF-00071

FE-5843

## AMENDATORY SUBROGATION CONDITION ENDORSEMENT

**SECTION I AND SECTION II - CONDITIONS**

**Subrogation** is replaced with the following:

a.  If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are automatically transferred to us to the extent of our payment. We are subrogated to the full extent of our payment and our rights are not dependent on whether that **insured** is fully compensated for their loss or is made whole. The application of a deductible under this policy shall not prevent any **insured** from being considered fully compensated or made whole.

b.  If any **insured** to or for whom we have made payment has not recovered from any party liable for the damages, that **insured** shall:

1)  take no action after a loss prejudicing our rights under this contract;

2)  keep these rights in trust for us;

FE-5843

3)  sign and deliver any legal papers we need;

4)  when we ask, take action through our representative to recover our payments;

5)  cooperate with us in a reasonable manner.

c.  If any **insured** to or for whom we have made payment recovers from any other party liable for the damages:

1)  that **insured** shall hold in trust for us the proceeds of the recovery; and

2)  that **insured** shall reimburse us to the extent of our payment.

d.  Any **insured** may waive in writing before a loss all rights of recovery against any person.

**Subrogation** does not apply under **SECTION II** to **MEDICAL PAYMENTS TO OTHERS** or **Damage to Property of Others.**

**SF- Finch**

SF-00072

AL-MISS  (09)               PDQ - Name and Address               QNB001F0


F 01 B53572 8      Team/Div/Unit: MALIK BLAND'S TEAM                B
                                        Type: HO - HOMEOWNERS

Status: 01 NOT IN BILL CYCLE  R   Note  IV

Eff: 11-30-2005  Exp: 11-30-2006      Cov cease: 06-25-2006
Agt: 1520-F282  Name: HOLLEY, DONALD A        (Donny     ) Ph: 334-644-2111
                                              Addl interest: 01

 Insured                          1st Addl Type: MTG
N: FINCH, WYATT JR                Acct no: 7430300001
A: 25 GAYLOR ST                        N: EMMCO LLC
C: VALLEY AL                           N: THE MORTGAGE SERVICE STATION
                                       N: ITS SUCC AND/OR ASSIGNS ATIMA
                                       A: 113 REED AVE
                       36854-4322  C: LEXINGTON SC

Ph: 337-756-6239 H
SSN 1: 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                 Zip: 29072-2016
DOB 1: 01-13-1948




    FPA: 009E01 EAST ALABAMA WATER AND FD




                        SFPP acct no: 0041406409

                                              07/10/10
                                              ID: NG8T
   PDQ screen: _____  Next system: PDQ   Input screen  _____


                                              **SF- Finch**
                                              SF-00073

AL-MISS  (09)                    PDQ - General Data                    QNB002T6

F 01 B53572 8  Name: FINCH, WYATT JR                Type: HO - HOMEOWNERS
Status: 01 NOT IN BILL CYCLE  R  Note  IV

Eff: 11-30-2005 EXP: 11-30-2006 Cov cease: 06-25-2006
Cnps: 2 Ratable: YES  Prem code: 2  Term: 98  Cancel eff date: 06-25-2006

Last entry date: 10-17-2005     LPU date: 06-28-2006           Stat agent: 1520


     Billing Information
Total premium:        1096.00

                         Acct renewal dt: 10-17-2005  B-10: N


                              Commission data
                Occr Agt  Mgr CC Np Rate Ctl  Premium
                 1  1520            0  0    1096.00




                                        Toof
                              01-11-2006 To 01-18-2006




SFPP acct no: 0041406409                          07/10/10
PDQ Screen: _____  Next system:  PDQ  Input screen _____.    ID: NG8T




                                              **SF- Finch**
                                                SF-00074

AL-MISS (09)                PDQ - Statistical                    QNB003B6

F 01 B53572 8   Name: FINCH, WYATT JR                SFPP acct no: 0041406409
   Eff: 11-30-2005  Exp: 11-30-2006
                                           Annual  Accounting        Sp Sb Pol
        PACE     Coverage                  Premium Premium        Zn Cov Cd Cd R
Ln  Index       Amount  Ded  Ded Liability Premium Premium        Zn Cov Cd Cd R
001 R-194.8     164000 1000       300000   1030.00              45 HO 1    W 1
002 R-194.8     164000 5%                    54.00              45 QB V    W 1
003             2500 1000                    12.00              45 JF      W 1
                                  Total    1096.00


Ln Eq Cl  BCEG  Certified BC  Improved BC Yr  Community BC  LPEX Subzn              R
001                                                             02                  1
002  B                                                          02                  1
003                                                             02                  1




Forms and opt: FP /7955                                    ----Coverages-----
  LSP   B1       FE /7201/2    FE /7301/4    OPT   OL
  OPT   ID       LSP   A1      FE /5320      FE /5398       A30       123000
  FE /5452       FE /5843
                                                           A32       300000
                                                           --Med Pay Limits--
                                                           A33         5000

  Risk no: 1   *** Overflow risk description data - F14 ***
    CNTY   009      CITY   Y850    TOWN C 5001    YR ISS 91    ZIP    368544322
    YR BLT 1989     RATEIV 127     CONST  V       RENYRS 9+    HM ALT SA
    MLD    N        UNITS  01      SFD D  1       HYDRA  Y


                                                            07/10/10
                                                            ID: NG8T
  PDQ screen: _____  Next system: PDQ  Input screen _____



**SF- Finch**
SF-00075

```
AL-MISS  (09)                PDQ - Statistical                    QNB003B6


F 01 B53572 8   Name: FINCH, WYATT JR              SFPP acct no: 0041406409
  Eff: 11-30-2005  Exp: 11-30-2006
       PACE      Coverage                Annual  Accounting      Sp Sb Pol
Ln   Index      Amount  Ded  Ded Liability Premium  Premium    Zn Cov Cd Cd R
001 R-194.8    164000 1000        300000  1030.00              45 HO 1    W 1
002 R-194.8    164000  5%                   54.00              45 QB V    W 1
003              2500 1000                   12.00             45 JF      W 1
                                Total     1096.00


                                                                         R
Ln Eq Cl  BCEG  Certified BC  Improved BC Yr  Community BC  LPEX Subzn
001                                                             02        1
002  B                                                          02        1
003                                                             02        1




Forms and opt:  FP /7955                          ----Coverages-----
  LSP    B1     FE /7201/2   FE /7301/4    OPT   OL
  OPT    ID     LSP   A1     FE /5320      FE /5398    A30      123000
  FE /5452      FE /5843
                                                      A32      300000
                                                   --Med Pay Limits--
                                                      A33        5000

Risk no: 1
  IV     1      RFTYPE S      20%CFD $232  GRP1    0
     QCLM  0    RATE V 112.03 ZONE V 10.00 SBZN V 10.00
  AD COV 1      EQ ZN  5      THFT D 0     RC      1


                                                   07/10/10
                                                   ID: NG8T

PDQ screen: _____ Next system: PDQ  Input screen _____
```

**SF- Finch**

SF-00076

```
AL-MISS  (09)          PDQ - Underwriting Screen              QNB004T0


F 01 B53572 8  Name: FINCH, WYATT JR          Type: HO - HOMEOWNERS
 Status: 01 NOT IN BILL CYCLE  R  Note  IV

Eff: 11-30-2005  Exp: 11-30-2006    Cov cease: 06-25-2006

Agt: 1520-F282  Name: HOLLEY, DONALD A      (Donny    ) Phone: 334-644-2111
                 Additional interests: 01  Yr blt: 1989  Yr iss: 1991


Forms and options:  FP /7955    HOMEOWNERS POL           Deductibles
  LSP   B1    LMT RPL COST-B            OTHER PERILS    1000
  FE /7201/2  AMENDATORY END            EARTHQUAKE      5%
  FE /7301/4  EARTHQUAKE END
  OPT   OL    ORDINANCE-LAW
  OPT   ID    COV A-INC DWLG
  LSP   A1    SMLR CONST-A                     Coverages
  FE /5320    POLICY END         Dwelling                164000
  FE /5398    FUNGUS EXCL        Dwelling extension        16400
  FE /5452    MOTOR VEHICLE      Contents        (A30)   123000
  FE /5843    AMEND SUB COND

Total premium:    1096.00         Personal liability (A32) 300000
                                  Med pay per person (A33)    5000
--------- Und Reports ------------
Vend Report Result Score  Date
  I    G                12-07-1999    CNPS: 2  TOOF: 01-11-2006 to 01-18-2006
                                        Pr Carr Loss: N
LNGTD: - 85.1719410        Loss history      Date of last CDQ: 09-28-2007
LATUD:   32.7858370                      Claim     No Claims:     2
Match type: A                            Number    Loss Date  Status
                                         01X516836 04-19-2006 CLOSED
                                         01B010485 03-05-1999 CLOSED


                                                      07/10/10
                                                      ID: NG8T
PDQ screen: ____  Next system: PDQ  Input screen  ____
```

SF- Finch
SF-00077

AL-MISS  (09)                    PDQ - Notes                    QNB006D7


F 01 B53572 8      Name: FINCH, WYATT JR              Type: HO - HOMEOWNERS
   Agt: 1520-F282   Name: HOLLEY, DONALD A          (Donny      )


Roof: S  1600

              Photo: 10-07-1998


Contact planned for: 1997 AGENT  RE-INSPECTION
                     Satisfied: 07-02-1997

   Last reinspection: 01-24-2003        By: VENDOR        Entered: 04-08-2003

              Inactive notes exist - View using Trio Notes

   Pol Note  OK'ING INCR DUE TO ADDITION OF GARAGE & PORCH. 10/7/98 DK
        1:   Oper ID: GQC3  Date: 10-07-1998



                                                        07/10/10
   PDQ screen: ____   Next system: PDQ_  Input screen: ____    ID: NG8T



SF- Finch
                                                        SF-00078

AL-MISS (09)                  Claim History Review                  QNN542X3


Pol no: F 01 B53572 8  Insured: FINCH, WYATT JR              Oper: NG8T

Yr iss: 1991 Exp: 11-30-2006 Type: HO - HOMEOWNERS SAS:      Agt/AFO: 1520 F282

Status: 18 Prop amt:     164000 Ded:    OTHER PERILS     1000  No claims:   2

```
        Claim    Date of    Cause/
No     Number     Loss      Reason   Status
   1 01X516836  04-19-2006  35/HLC   CLOSED
```

```
         Reserve        Paid    Recovery      Expense    Mold Ind
          Amount       Amount     Amount       Amount     Amount
   1          0            0          0            0          0
```
                       INSURED FINCH, WYATT JR
Group Ind: N                              Initial dt closed: 05-02-2007
      DOL ded: OTHER PERILS     1000

```
   2 01B010485  03-05-1999  37/NC    CLOSED
   2          0         2876          0            0          0
```
                       INSURED FINCH, WYATT JR
Group Ind: 1                              Initial dt closed: 03-31-1999
      DOL ded: OTHER PERILS      250




                                                    07/10/10
                                                    13:34:22
  Selections: _____                    @NG8T
Next System: PDQ   PDQ screen: UND   Page:  1


                                              SF- Finch
                                                  SF-00079

AL-MISS  (09)                    Claim Detail Cause                    QNN544T0


Pol no: F 01 B53572 8          SAS:          Type: HO - HOMEOWNERS
Insured: FINCH, WYATT JR                     Agt: 1520 HOLLEY, DONALD A
         25 GAYLOR ST                        Exp: 11-30-2006
  Status: 18 NON-RECEIPT PREM    R    No claims:   2
  Yr iss: 1991                        Prop amt:    164000
     Ded:    OTHER PERILS    1000  EARTHQUAKE      5%


Claim no: 01X516836        Dt of loss: 04-19-2006    Dt closed: 05-02-2007 RC:
  Pol no: F 01 B53572 8   Dt reported: 04-24-2007  Indem amt pd:          0.00
  Agent: 1520              Suit/ADR: Y/             Reserve amt:          0.00
   Type: HO - HOMEOWNERS   Cat code: RA             Expense amt:          0.00
   Unit:  4 8               Salvage: NO             Recovery amt:         0.00
 Status: CLOSED         Subrogation: NO             Mold ind amt:         0.00
                                                    Claim off: MONTGOMERY OP CN

   Ins: FINCH, WYATT JR                Claimant:
        25 GAYLOR ST              Claimant dt of birth:
Adjuster: ANGELA       B PIERCE          Adjuster phone no: 334-213-1082
Und Rev:
Group Ind : N                          Initial dt closed: 05-02-2007
    DOL ded: OTHER PERILS     1000


  Cause/Line: 35/HO          WIND OR HAIL - BUILDING
      Status: CWP            RESERVE CLOSED WITHOUT PAYMENT OR NO CLAIM
Indem amt pd:          0.00  Reserve amt:          0.00 Loc no:
  Expenses pd:          0.00  Recovery amt:         0.00
       Comment: HL HAIL LOSS

  Cause/Line:
      Status:
Indem amt pd:                Reserve amt:                   Loc no:
  Expenses pd:                Recovery amt:
       Comment:

                                                            07/10/10
                                                            @NG8T
Next system: PDQ    PDQ screen: UND    Page:    1


SF- Finch
SF-00080

```
AL-MISS (09)      **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                      ENTRY     EFFECTIVE
                   TRANSACTION    OP ID  DATE       DATE        PREMIUM
SKEL CNP (CANC NON-PAY)                06-28-2006  06-25-2006     547.98

CNP NOTICE PRODUCED                    06-05-2006

SFPP PRECANCEL                        06-05-2006  06-25-2006     547.98

SFPP CLEAR PRECANCEL                  03-17-2006  03-27-2006     804.19

CNP NOTICE PRODUCED                   03-07-2006

SFPP PRECANCEL                        03-07-2006  03-27-2006     804.19

SFPP TOOF REINSTATEMENT               01-19-2006  01-18-2006    1075.18
          01-11-2006 TO 01-18-2006

SKEL CNP (CANC NON-PAY)               01-16-2006  01-11-2006    1096.00

CNP NOTICE PRODUCED                   12-22-2005

SFPP PRECANCEL                        12-22-2005  01-11-2006    1096.00

SFPP CLEAR PRECANCEL                  12-13-2005  12-26-2005    1096.00




              *** OVERFLOW - PRESS PF14 ***
                                                     07/10/10
                                                     ID: NG8T
PDQ SCREEN ____  NEXT SYSTEM  PDQ   INPUT SCREEN _____
```

**SF- Finch**
SF-00081

```
AL-MISS  (09)     **** PDQ - HISTORY OF TRANSACTION ****       QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                            ENTRY    EFFECTIVE
                   TRANSACTION        OP ID  DATE       DATE       PREMIUM
CNP NOTICE PRODUCED                       12-06-2005

SFPP PRECANCEL                            12-06-2005 12-26-2005    1096.00

COVERAGE CHANGED AS FOLLOWS -       GG2N 11-29-2005
     1ST MORTGAGEE LOAN NUMBER ADDED

1ST ADDITIONAL INTEREST CHANGED     GG2N 11-29-2005 11-29-2005
     LOAN NUMBER DELETED - NO PREV LOAN #

1ST ADDITIONAL INTEREST CHANGED     GG2N 11-29-2005 11-29-2005
     OLD MTG - 0009680000

PHONE NUMBER CHANGE FROM CR                          10-26-2005

WRITTEN PREM AND COMM RELEASED            10-17-2005

BILLING                                   10-17-2005 11-30-2005    1096.00

MTG ACTIVITY - 0009680000                 09-14-2005

1ST ADDITIONAL INTEREST CHANGED     GG2N 08-09-2005
     OLD MTG - 9094110005

PHONE NUMBER CHANGE FROM CR                          12-10-2004

SFPP CLEAR PRECANCEL                      12-09-2004 12-26-2004    1003.00



            *** OVERFLOW - PRESS PF14 ***
                                                          07/10/10
PDQ SCREEN ____   NEXT SYSTEM PDQ   INPUT SCREEN ____     ID: NG8T
```

**SF- Finch**

SF-00082

```
AL-MISS  (09)     **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                        ENTRY    EFFECTIVE
                                        DATE      DATE        PREMIUM
             TRANSACTION         OP ID
CNP NOTICE PRODUCED                     12-06-2004

SFPP PRECANCEL                          12-06-2004  12-26-2004    1003.00

WRITTEN PREM AND COMM RELEASED          10-15-2004

BILLING                                 10-15-2004  11-30-2004    1003.00

SFPP CLEAR PRECANCEL                    06-10-2004  06-23-2004     401.02

CNP NOTICE PRODUCED                     06-03-2004

SFPP PRECANCEL                          06-03-2004  06-23-2004     401.02

SFPP CLEAR PRECANCEL                    03-16-2004  03-25-2004     601.51

CNP NOTICE PRODUCED                     03-05-2004

SFPP PRECANCEL                          03-05-2004  03-25-2004     601.51

WRITTEN PREM AND COMM RELEASED          10-16-2003

BILLING                                 10-16-2003  11-30-2003     802.00

MLD PENDED CHANGE EVALUATOR             10-07-2003  11-30-2003

BILLING EXTRACT                         10-06-2003

SFPP CLEAR PRECANCEL                    06-05-2003  06-23-2003     327.96


              *** OVERFLOW - PRESS PF14 ***
                                                      07/10/10
PDQ SCREEN ____   NEXT SYSTEM PDQ   INPUT SCREEN ____  ID: NG8T
```

**SF- Finch**

SF-00083

```
AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****      QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                          ENTRY    EFFECTIVE
                    TRANSACTION      OP ID  DATE      DATE      PREMIUM
CNP NOTICE PRODUCED                        06-03-2003

SFPP PRECANCEL                             06-03-2003  06-23-2003    327.96

REINSPECTION                         BDK6  04-08-2003  01-24-2003
        Vendor

SFPP CLEAR PRECANCEL                       12-06-2002  12-24-2002    653.04

CNP NOTICE PRODUCED                        12-04-2002

SFPP PRECANCEL                             12-04-2002  12-24-2002    653.04

DECREASE ENDORSEMENT                 BDK6  11-08-2002  11-30-2002    218.00
        DEDUCTIBLES - SECTION I

WRITTEN PREM AND COMM RELEASED       BDK6  10-09-2002

BILLING                              BDK6  10-09-2002  11-30-2002    874.00

DECREASE ENDORSEMENT                 BDK6  10-09-2002  09-19-2002      2.96
        HOME/AUTO DISCOUNT ADDED

MLD PENDED CHANGE EVALUATOR                10-08-2002  11-30-2002

BILLING EXTRACT                            10-07-2002

SFPP CLEAR PRECANCEL                       06-11-2002  06-24-2002    374.54

CNP NOTICE PRODUCED                        06-04-2002

            *** OVERFLOW - PRESS PF14 ***
                                                         07/10/10
PDQ SCREEN _____  NEXT SYSTEM PDQ   INPUT SCREEN ___ __    ID: NG8T
```

**SF- Finch**

SF-00084

AL-MISS (09)    **** PDQ - HISTORY OF TRANSACTION ****    QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

| TRANSACTION | OP ID | ENTRY DATE | EFFECTIVE DATE | PREMIUM |
|---|---|---|---|---|
| SFPP PRECANCEL | | 06-04-2002 | 06-24-2002 | 374.54 |
| WRITTEN PREM AND COMM RELEASED | | 10-16-2001 | | |
| BILLING | | 10-16-2001 | 11-30-2001 | 749.00 |
| WRITTEN PREM AND COMM RELEASED | | 10-13-2000 | | |
| BILLING | | 10-13-2000 | 11-30-2000 | 698.00 |
| MLD PENDED CHANGE EVALUATOR | | 10-06-2000 | 11-30-2000 | |
| BILLING EXTRACT | | 10-05-2000 | | |
| FPA CHANGED | AQ7Z | 01-24-2000 | | |
| CODE CHANGE | AQ7Z | 01-24-2000 | 01-24-2000 | |
| WRITTEN PREM AND COMM RELEASED | | 10-18-1999 | | |
| BILLING | | 10-18-1999 | 11-30-1999 | 675.00 |
| SFPP CLEAR PRECANCEL | | 06-09-1999 | 06-23-1999 | 296.46 |
| CNP NOTICE PRODUCED | | 06-03-1999 | | |
| SFPP PRECANCEL | | 06-03-1999 | 06-23-1999 | 296.46 |


*** OVERFLOW - PRESS PF14 ***

PDQ SCREEN _____    NEXT SYSTEM PDQ    INPUT SCREEN _____

07/10/10
ID: NG8T

SF- Finch

SF-00085

AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****    QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

|  | TRANSACTION | OP ID | ENTRY DATE | EFFECTIVE DATE | PREMIUM |
|---|---|---|---|---|---|
| 1ST ADDITIONAL INTEREST CHANGED | | AQ7Z | 12-18-1998 | 12-17-1998 | |
| OLD MTG - 6119000005 | | | | | |
| SFPP CLEAR PRECANCEL | | | 12-09-1998 | 12-24-1998 | 619.82 |
| CNP NOTICE PRODUCED | | | 12-04-1998 | | |
| SFPP PRECANCEL | | | 12-04-1998 | 12-24-1998 | 619.82 |
| DELAYED BILLING PROCESSED | | | 10-19-1998 | | |
| WRITTEN PREM AND COMM RELEASED | | | 10-12-1998 | | |
| BILLING | | AOTV | 10-12-1998 | 11-30-1998 | 593.00 |
| (DELAYED) | | | | | |
| INS TO VALUE CHANGE | | AOTV | 10-08-1998 | | |
| INCREASE ENDORSEMENT | | AOTV | 10-08-1998 | 09-28-1998 | 26.82 |
| SECTION I COVERAGE LIMITS CHANGED | | | | | |
| FORM NUMBER OR OPTION ADDED, CHANGED, OR DELETED | | | | | |

PDQ SCREEN  ____   NEXT SYSTEM PDQ   INPUT SCREEN   _____       07/10/10
                                                                 ID: NG8T

**SF- Finch**

SF-00086

```
AL-MISS  (09)    **** HISTORY OF JOURNAL ACTIVITY SCREEN ****         QND536A2

01 B53572 8     NAME FINCH, WYATT JR                 TYPE HO - HOMEOWNERS

                                            REMITTER/   CROSS      BALANCE
                                              PAYEE    REFERENCE     DUE
JNL DATE JNL CO      AMOUNT        ACCOUNT
06-28-06 PCT  F      547.98 DR 020-04 CANC PREM
         PCT  F      547.98 CR 250-00 SFPP

01-19-06 PCT  F     1075.18 CR 010-04 WRIT PREM
         PCT  F     1075.18 DR 250-00 SFPP

01-16-06 PCT  F     1096.00 DR 020-04 CANC PREM
         PCT  F     1096.00 CR 250-00 SFPP

10-17-05 PCT  F     1096.00 CR 010-04 WRIT PREM
         PCT  F     1096.00 DR 250-00 SFPP
```

```
PDQ SCREEN HIST  NEXT SYSTEM PDQ
```

07/10/10
@NG8T

**SF- Finch**
SF-00087

CAR INDEX: 22 B5-35728  F  01

```
                    FIRE POLICY TRANSACTIONS - STREAMED
                ALABAMA            AQA UNIT              AGT/AFO: 1520/F285
F 01-B5-3572-8  HO - HOMEOWNERS    EFF/EXP: 11-30-02 11-30-03 STATUS: 01
                                                   MPP NO: 0041-4064-09
FINCH, WYATT JR                    CHGS INCL: DED
25 GAYLOR ST
VALLEY AL  36854-4322              INS PH: HOME (   ) 756-6239




EFF DATE: (11-30-02) RECD DATE: (11-08-02) WRTN DATE: (11-07-02) TIME: (04:07P)
**DEDUCTIBLE AND COVERAGE AMOUNT CHANGES** STREAMED

DEDUCTIBLES:
(1000)  ALL PERIL
SOURCE: ECHO AGT  HOLLEY, Donny              PHONE: 334-644-2111
                  INITIALS: (LS )
```

**SF- Finch**

SF-00088

STATE = AL

RFRIN026
STATE FARM INSURANCE COMPANIES
PPC MAPCHECK WORKSHEET
PPC FILE DATE 12-03-1999
12-07-1999

COUNTY NAME:    CHAMBERS

POLICY TYPE:    HOMEOWNER (FORM W)                    PRIMARY FLAGS: D

POLICY NUMBER: F-01-B5-3572-8    *F 34*    SECONDARY FLAG:  1

INSURED:       FINCH, WYATT JR                       PHONE:      756-6239

AGENT:         HOLLEY, DONALD A. 1520                PHONE:   (334)644-2111

POLICY INFORMATION AS OF 12-07-1999                  CORRECTED INFORMATION

LOCATION ADDRESS:    25 GAYLOR ST

                     VALLEY AL


ZIPCODE:             368544322

COUNTY:              009, CHAMBERS

PROTECTION CLASS:    5                               *5*

FPA:                         E ALABAMA WATER AND FD  *009E01*

DISTANCE TO SFD:     1 MILES                         *1*

PRFPA:                                               *BM 12/9*

TOWNCLASS INFO
  3RD DIGIT:         O                               *0*

  4TH DIGIT:         1                               *1*

ZONE VERIFICATION
  CURRENT ZONE:
GENERATED ZONE:

_____ INCREASE    _____ DECREASE    _____ NO CHANGE

COMMENTS:

APPROVED BY:_____DATE:_____

**SF- Finch**

SF-00089

HOMEOWNER'S/CONDOMINIUM
UNITOWNER'S APPLICATION

☑ State Farm Fire and Casualty Company  ☐ State Farm General Insurance Company  ☐ State Farm Lloyds

OFFICE USE ONLY

MPP 474 064 04

NAME: Last Name **FINCH Jr.**  First Name **WYATT**

Mailing Address / Location of dwelling: 5 **GAYLOR St**  City or Town **Valley**  State **Al**  Zip Code **36854**  County **Chambers**

Telephone Number **756 6239**

Applicant's Birthdate **1/13/48**  Social Security Number **417 62 0596**

Prior insurance carrier **TRANSAMERICA PREMIER INS CO**

Policy Number **1A54592-3351**

Number of residences in past three years **2**

Specific Occupation (applicant): **SUPERVISOR**

UNDERWRITING ONLY **08  12/6/91**

Year purchased **89**  Purchase price of dwelling $ **64,000**  Current market value $ **71,000**

Protection class **5**  ☐ suburban  Zone **48**

Year built **89**  No. of units in fire div  Construction type **SG**

Construction (for 1 yr):  Distance to hydrant **500 FT**  Servicing fire dept **1 MI**

Name of servicing fire department: **EAST A1A**

Base premium **1600**

Form: **HO-3**  Deductible **$250**

Replacement cost **72220**  **3,500**  Tentative RC **75,700**  **96**  Total RC **72672**

| Coverage | Amount | | |
|---|---|---|---|
| Dwelling or tracking property | **70,000** | | |
| Dwelling extension | **7,000** | **248.00** | |
| Personal property | **49,000** | | |
| Loss of use | | | |
| Personal liability (each occurrence) | $100,000 | **300,00** | |
| Medical payments to others (each person) | $1,000 | | |

Replacement Cost Contents (RC) **2700**

Total Premium **264.05**

Named Add'l Insured and Address: **COLONIAL CREDIT CORPORATION**
**P.O. Box 43200, Birmingham Al 35243  630 8732**

Agent's Code Stamp:
DONNY HOLLEY  1520
MIKE DOUGLAS  9731

Loan number: **FIRE CO RECORDS**

Applicant's Signature X _Wyatt Finch Jr._

Date **11 21 91**  Hour **21**  ☐ A.M.  ☐ P.M.

ALSO COMPLETE OTHER SIDE

F7 2540.30  Rev. 9.88

SF- Finch

SF-00090

**CHECK ALL THAT APPLY**

HOME ALERT | Fire or Smoke Local Alarm | Dead Bolt Locks | Fire Extinguisher | Burglar Alarm System | Fire/Burglar Alarm reporting to fire dept., police dept. or central station | | Fire or Smoke Detectors with digital or voice-synthesized telephone dialer

| | Airport dead bolt | Fireplay | Outdoors $64 sq. feet | Business Prop $ N/A Hazardous | Personal Item | Additional Interior Solar Real Alarm | TV Stereo Tape Records | Fire Alarm Annual Central Flood | Musical Instru-ments Camera Sport Area | Computers Hardware (Included) |

PERS. PROP. | Approximate value of the following pers. prop: | 5000. | 1500. | 500. | — | 5000. | 1000. | 2000. | — | 1500. | **TOTAL AMOUNT OF LOSS** |

**DETAILS OF LOSS**

LOSSES | DATE OF LOSS | | None | | | | | | $ |

Comment in the Remarks section on any pets which appear unfriendly or to have vicious tendencies. In addition, if there are any dogs in the household, complete the following three questions: | | | | YES | NO | | | YES | NO

| | | Ever bitten anyone? | | | If yes, explain in Remarks | | Raised or bred for attack or guard purposes? | | |

Breed: | | | | | | | | | Thermostat controlled? | YES | NO

COMPLETE FOR ALL RISKS OVER 35 YEARS OLD | | | Central | Space | Vented | Other (specify) | Fuel | Gas | Oil | Coal | Other (specify) | | |

| Heating | Age | Yrs. | Type | | | Unvented | | | | | | | | Rating of Alarm time |

| Wiring | Age | Yrs. | Type | Fuses | Breaker | Conduit | No. of Amps | | Size in amps | | No. of circuit breakers | | |

Has any remodeling been done? | YES | NO | If yes, describe in Remarks: (1) a list of remodeling (2) cost of improvements; and (3) individual or firm that did work. | | If the dwelling overlaps for the Residential Dwelling Credit, describe extent of remodeling in Remarks. | | |

WORK COMP. | Number of employees | INSIDE | OUTSIDE | Hours worked per week (each employee) | INSIDE | OUTSIDE | Salary per quarter (each employee) | INSIDE | OUTSIDE | YES | NO

| Workers' Compensation Policy requested? | | YES | NO | Workers' Compensation Contingency Endorsement requested? (not available in all states) | | | |

If risk is within 1000 ft. at high tide of ocean, gulf, bay-harbor, or large open body of water, give reason for submission in Remarks and refer to Underwriting Guide for information required.

If located on island, name of island

COASTAL & BLDG. | If increased building and/or loss assessments is requested, is there a master policy in force for this building? | | YES | NO | If no, explain in Remarks | |

| Is master policy written on an all physical loss basis? | | YES | NO | If no, explain in Remarks | |

BILLING | RENEWAL BILLS: | Original — | ☒ Insured | Copy — | ☐ Insured | ENDORSEMENT BILLS: | Original — | ☐ Insured | Copy — | ☐ Insured |
| | | ☐ Mortgagee | | ☐ Mortgagee | | | ☐ Mortgagee | | ☐ Mortgagee |

**REMARKS**

SF- Finch    SF-00091







**SF- Finch**     SF-00092



FP-7955
(8/96)

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . . . . . .   1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

**SECTION I - YOUR PROPERTY**
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . .   3
      Coverage A - Dwelling . . . . . . . . . . . . . . . . . . . .   3
      Coverage B - Personal Property . . . . . . . . . . . . . . .   3
      Coverage C - Loss of Use . . . . . . . . . . . . . . . . . .   4
      Additional Coverages . . . . . . . . . . . . . . . . . . . .   5
      Inflation Coverage . . . . . . . . . . . . . . . . . . . . .   7
   LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . .   7
   LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . .   9
   LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . .  11
   CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . .  13

**SECTION II - YOUR LIABILITY**
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . .  15
      Coverage L - Personal Liability . . . . . . . . . . . . . .  15
      Coverage M - Medical Payments to Others . . . . . . . . . .  15
      Additional Coverages . . . . . . . . . . . . . . . . . . . .  15
   EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . .  16
   CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . .  18

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . . . . .  19

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . . . . .  20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

FP-7955
(8/96)

**SF- Finch**

Printed in U.S.A.

SF-00093

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; a

4. this policy contains all of the agreements between y and us and any of our agents.

Unless otherwise indicated in the application, you state t during the three years preceding the time of your applicat for this insurance your Loss History and Insurance Hist are as follows:

1. Loss History: you have not had any losses, insured not; and

2. Insurance History: you have not had any insurer agency cancel or refuse to issue or renew similar ins ance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupati This includes farming.

3. "**Declarations**" means the policy **Declarations**, a amended **Declarations**, the most recent renewal no or certificate, an Evidence of Insurance form or a endorsement changing any of these.

4. "**insured**" means you and, if residents of your househ

   a. your relatives; and

   b. any other person under the age of 21 who is in care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which policy applies, the person or organization leg responsible for them. However, the animal or wa craft must be owned by you or a person include 4.a. or 4.b. A person or organization using or ha custody of these animals or watercraft in the co of a **business**, or without permission of the owne not an **insured**; and

1

**SF- Finch**

SF-00094

FP-

d.  with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5.  "**insured location**" means:

a.  the **residence premises**;

b.  the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c.  any premises used by you in connection with the premises included in 5.a. or 5.b.;

d.  any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e.  land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f.  individual or family cemetery plots or burial vaults owned by an **insured**;

g.  any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h.  vacant land owned by or rented to an **insured**. This does not include farm land; and

i.  farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6.  "**motor vehicle**", when used in Section II of this policy, means:

a.  a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c.  a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d.  any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7.  "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a.  **bodily injury**; or

b.  **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8.  "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9.  "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10.  "**residence premises**" means:

a.  the one, two, three or four-family dwelling, other structures and grounds; or

b.  that part of any other building;

where you reside and which is shown in the **Declarations**.

**SF- Finch**

SF-00095

2

FP-7955

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling**. We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**.

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension**. We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered**. We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

### COVERAGE B - PERSONAL PROPERTY

1. **Property Covered**. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or

otherwise forming a part of the realty. At your request, will cover personal property owned by others while property is on the part of the **residence premises** oc pied exclusively by an **insured**. At your request, we also cover personal property owned by a guest o **residence employee**, while the property is in any ot residence occupied by an **insured**.

We cover personal property usually situated at an **sured's** residence, other than the **residence premis** for up to $1,000 or 10% of the Coverage B limit, wh ever is greater. This limitation does not apply to pers property in a newly acquired principal residence for first 30 days after you start moving the property ther the **residence premises** is a newly acquired princ residence, personal property in your immediate p principal residence is not subject to this limitation for first 30 days after the inception of this policy.

**Special Limits of Liability**. These limits do not incre the Coverage B limit. The special limit for each of following categories is the total limit for each loss fo property in that category:

a. $200 on money, coins and medals, including an these that are a part of a collection, and bank no

b. $1,000 on property used or intended for use **business**, including merchandise held as sample for sale or for delivery after sale, while on the **dence premises**. This coverage is limited to $25 such property away from the **residence premis**

   Electronic data processing system equipment o recording or storage media used with that equipr is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, eler's checks, money orders and other negoti instruments, accounts, deeds, evidences of o letters of credit, notes other than bank notes, m scripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard tors, including their trailers, furnishings and e ment;

e. $1,000 on trailers not used with watercraft;

3

**SF- Finch**

SF-00096                    FP

f.  $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g.  $2,500 for loss by theft of firearms;

h.  $2,500 for loss by theft of silverware and goldware;

i.  $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2.  **Property Not Covered.** We do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds or fish;

c.  any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

   (1)  used solely to service the **insured location**; or

   (2)  designed for assisting the handicapped;

d.  devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e.  aircraft and parts;

f.  property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g.  property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured**;

h.  property rented or held for rental to others away from the **residence premises**;

i.  any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j.  books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1.  **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2.  **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3.  **Prohibited Use.** When a civil authority prohibits your u of the **residence premises** because of direct damage a neighboring premises by a Loss Insured, we will cc any resulting Additional Living Expense and Fair Re

4       **SF- Finch**   SF-00097              FF

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay u[...] $500 for your liability assumed by contract or agreem[...] for fire department charges. This means charges incu[...] when the fire department is called to save or pr[...] covered property from a Loss Insured. No deduc[...] applies to this coverage. This coverage may increase[...] limit otherwise applicable.

5. **Property Removed.** Covered property, while being[...] moved from a premises endangered by a Loss Insu[...] is covered for any accidental direct physical loss.[...] coverage also applies to the property for up to 30 [...] while removed. We will also pay for reasonable exper[...] incurred by you for the removal and return of the cove[...] property. This coverage does not increase the limit [...] plying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery [...] Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay beca[...] of the theft or unauthorized use of credit c[...] and bank fund transfer cards issued to or r[...] tered in an **insured's** name. If an **insured** [...] not complied with all terms and conditions u[...] which the cards are issued, we do not cover [...] by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or altera[...] of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in g[...] faith of counterfeit United States or Cana[...] paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated abov[...] forgery or alteration committed by any one per[...] This limit applies when the forgery or alteratio[...] volves one or more instruments in the same los[...]

   b. We do not cover loss arising out of **business** pur[...] or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle[...] claim or suit that we decide is appropriate. [...] obligation to defend claims or suits ends w[...]

5

**SF- Finch**                    FP-[...]

SF-00098

the amount we pay for the loss equals our limit of liability.

    (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

    (3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

    a. removal of a plug from an electrical outlet; or

    b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

    a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

    b. hidden decay of a supporting or weight-bearing structural member of the building;

    c. hidden insect or vermin damage to a structural member of the building;

    d. weight of contents, equipment, animals or people;

    e. weight of ice, snow, sleet or rain which collects on a roof; or

    f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6

**SF- Finch**

SF-00099

FP-7955

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; the

2. multiply the resulting factor by the limits of liability Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liab is changed at your request, the effective date of this Infla Coverage provision is changed to coincide with the effec date of such change.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

### COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and space-craft.

6. **Vehicles,** meaning impact by a vehicle.

7. **Smoke,** meaning sudden and accidental damage smoke.

   This peril does not include loss caused by smoke agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property a known location when it is probable that the property been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone fro setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other pe regularly residing on the **insured location.** erty of a student who is an **insured** is co while located at a residence away from ho the theft is committed by a person who is n **insured;**

      (2) in or to a dwelling under construction or of rials and supplies for use in the constructio the dwelling is completed and occupied; or

7

**SF- Finch** SF-00100 F

(3) from the part of a **residence premises** rented to others:

    (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

    (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

    (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

    (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

c.  loss caused by theft that occurs away from the **residence premises** of:

    (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

    (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

    (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a.  to the system or appliance from which the water or steam escaped;

b.  caused by or resulting from freezing;

c.  caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a.  caused by or resulting from freezing; or

b.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a.  maintain heat in the building; or

b.  shut off the water supply and drain the system and appliances of water.

**SF- Finch**

SF-00101

FP-7955

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part building on the **residence premises**. There is no co age for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of w or steam from a:

      (1) heating, air conditioning or automatic fire pro tive sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, withir around any shower stall, shower bath, tub in lation, or other plumbing fixture, including walls, ceilings or floors;

   which occurs over a period of time. If loss to cov property is caused by water or steam not other excluded, we will cover the cost of tearing out replacing any part of the building necessary to re the system or appliance. We do not cover loss t system or appliance from which the water or st escaped;

   g. wear, tear, marring, scratching, deterioration, in ent vice, latent defect or mechanical breakdown

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or indu operations;

   l. settling, cracking, shrinking, bulging, or expansi pavements, patios, foundation, walls, floors, roo ceilings;

   m. birds, vermin, rodents, insects, or domestic anir We do cover the breakage of glass or safety gl material which is a part of a building, when ca by birds, vermin, rodents, insects or domestic mals; or

9

**SF- Finch**

SF-00102          FP

n. pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

10

**SF- Finch**

SF-00103          FP-7955

b. defect, weakness, inadequacy, fault or unsoundness in:

    (1) planning, zoning, development, surveying, siting;

    (2) design, specifications, workmanship, construction, grading, compaction;

    (3) materials used in construction or repair; or

    (4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

# SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

## COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

    a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES**, **COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

      (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

      (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

    b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

    a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES**, **COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

      (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or

11

**SF- Finch**

SF-00104

FP-795

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

### 1. B1 - Limited Replacement Cost Loss Settlement.

a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

(1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

(2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

### 2. B2 - Depreciated Loss Settlement.

a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

**SF- Finch**

12

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the polic__ or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

   (4) produce employees, members of the **insured**__ household or others for examination under oa__ to the extent it is within the **insured's** power __ do so; and

   e. submit to us, within 60 days after the loss, yo__ signed, sworn proof of loss which sets forth, to t__ best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the pro__ erty involved and all encumbrances on the pro__ erty;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the prope__ during the term of this policy;

      (5) specifications of any damaged building and __ tailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal pr__ erty described in 2.c.;

      (7) receipts for additional living expenses incu__ and records supporting the fair rental value l__ and

      (8) evidence or affidavit supporting a claim under __ Credit Card, Bank Fund Transfer Card, For__ and Counterfeit Money coverage, stating __ amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or se__ may elect to:

   a. repair or replace any part to restore the pair or s__ its value before the loss; or

   b. pay the difference between the depreciated val__ the property before and after the loss.

13

**SF- Finch**

SF-00106

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a.  reach agreement with you;

   b.  there is an entry of a final judgment; or

   c.  there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured.**

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a.  If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b.  If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

        (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

        (2) pays on demand any premium due under this policy, if you have not paid the premium; and

        (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c.  If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

    d.  If we pay the mortgagee for any loss and deny payment to you:

        (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

        (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e.  Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

14

**SF- Finch**

FP-7955

SF-00107

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered

under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

# SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises

out of or in the course of the **residence employee**'s employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage limit. We are not obligated to apply for or furnish bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues entry of the judgment and before we pay or ten or deposit in court that part of the judgment does not exceed the limit of liability that applies

2. **First Aid Expenses.** We will pay expenses for first others incurred by an **insured** for **bodily injury** cov under this policy. We will not pay for first aid to you o other **insured**.

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to prope others caused by an **insured**.

   b. We will not pay more than the smallest of the foll amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15

**SF- Finch**

SF-00108

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

16

**SF- Finch**

SF-00109        FP-7955

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any insure because of child care services provided by or the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently a ing on behalf of any **insured**; or

(2) any person who makes a claim because of **bod injury** to any person who is in the care of a **insured** because of child care services provid by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently a ing on behalf of any **insured**.

This exclusion does not apply to the occasional ch care services provided by any **insured**, or to part-time child care services provided by any **insu** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out **insured's** participation in, or preparation or prac for any prearranged or organized race, spee demolition contest, or similar competition involvir motorized land vehicle or motorized watercraft. T exclusion does not apply to a sailing vessel less t 26 feet in overall length with or without auxili power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment cha against all members of an association of prop owners; or

(2) assumed under any unwritten contract or ag ment, or by contract or agreement in conne with a **business** of the **insured**;

b. **property damage** to property currently owned b **insured**;

c. **property damage** to property rented to, occupi used by or in the care of any **insured**. This exclu

17

**SF- Finch**                    FF

SF-00110

does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

   (1) the identity of this policy and **insured**;

   (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

   (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

   (1) making settlement;

   (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

   (3) the conduct of suits and attend hearings and trials; and

   (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

18

**SF- Finch**

SF-00111

FP-7955

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against unless there has been compliance with the policy pr sions.

No one shall have the right to join us as a party to action against an **insured**. Further, no action with resp to Coverage L shall be brought against us until obligation of the **insured** has been determined by f judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvenc an **insured** shall not relieve us of our obligation un this policy.

8. **Other Insurance - Coverage L.** This insurance is ex over any other valid and collectible insurance exc insurance written specifically to cover as excess over limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons sta in this condition. We will notify you in writing of date cancellation takes effect. This cancellation tice may be delivered to you, or mailed to you at y mailing address shown in the **Declarations**. Pro mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, we r cancel at any time by notifying you at least days before the date cancellation takes eff This condition applies whether the premiun payable to us or our agent or under any fina or credit plan.

   (2) When this policy has been in effect for less t 60 days and is not a renewal with us, we r cancel for any reason. We may cancel by not ing you at least 10 days before the date can lation takes effect.

   (3) When this policy has been in effect for 60 d or more, or at any time if it is a renewal with we may cancel:

   (a) if there has been a material misrepresen tion of fact which, if known to us, would h caused us not to issue this policy; or

19

**SF- Finch**    FP-7

SF-00112

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured**. The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property**. The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item b., for property used or intended for use in a **business**,

20

**SF- Finch**

FP-7955

SF-00113

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

    a. clerical office employee, salesperson, collector, messenger; or

    b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

    while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

    a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

    b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

        (1) computer programming, architectural, engineering or industrial design services;

        (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

        (3) beauty or barber services or treatment;

    c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

    d. when the **insured** is a member of the faculty or teaching staff of a school or college:

        (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

            (a) draft or saddle animals, including v[...] cles for use with them; or

            (b) aircraft, **motor vehicles**, recreatio[...] motor vehicles or watercraft, airboats[...] cushions or personal watercraft w[...] use a water jet pump powered by[...] internal combustion engine as the [...] mary source of propulsion;

        owned or operated, or hired by or for [...] **insured** or employer of the **insured** or u[...] by the **insured** for the purpose of instruc[...] in the use thereof; or

        (2) under Coverage M for **bodily injury** to a [...] arising out of corporal punishment adm[...] tered by or at the direction of the **insure**[...]

**Option FA - Firearms.** Firearms are insured for accid[...] direct physical loss or damage.

The limits for this option are shown in the **Declarations**[...] first amount is the limit for any one article; the second am[...] is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property describ[...] this option either consisting of, or directly and imm[...] ately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual [...] rioration;

    b. insects or vermin;

    c. any process of refinishing, renovating, or repai[...]

    d. dampness of atmosphere or extremes of tem[...] tures;

    e. inherent defect or faulty manufacture;

    f. rust, fouling or explosion of firearms;

    g. breakage, marring, scratching, tearing or de[...] unless caused by fire, thieves or accidents to co[...] ances; or

    h. infidelity of an **insured's** employees or pers[...] whom the insured property may be entrust[...] rented;

21                 **SF- Finch**    SF-00114       [...]

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension**, item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and

incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an incidental **business** or private garage;

(4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

22

**SF- Finch**

SF-00115

FP-7955

one part and rent or hold for rental the other part; or

    (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

  a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

  b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

  c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

  d. any claim made or suit brought against any **insured** by:

    (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

      (a) any **insured**;

      (b) any employee of any **insured**; or

      (c) any other person actually or apparently acting on behalf of any **insured**; or

    (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

      (a) any **insured**;

      (b) any employee of any **insured**; or

      (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indi[...] in (1) and (2) above.

This exclusion does not apply to the occasional care services provided by any **insured**, or t[...] part-time child care services provided by any **ins**[...] who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fu[...] ments and garments trimmed with fur, precious and sem[...] cious stones, gold other than goldware, silver other [...] silverware and platinum are insured for accidental [...] physical loss or damage.

The limits for this option are shown in the **Declarations** first amount is the limit for any one article; the second a[...] is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property descri[...] this option either consisting of, or directly and im[...] ately caused by, one or more of the following:

  a. mechanical breakdown, wear and tear, gradual [...] rioration;

  b. insects or vermin;

  c. inherent vice; or

  d. seizure or destruction under quarantine or cus[...] regulations;

2. our limit for loss by any Coverage B peril except th[...] the limit shown in the **Declarations** for Coverage B[...] the aggregate limit;

3. our limits for loss by theft are those shown in the **D**[...] **rations** for this option; and

4. our limits for loss by any covered peril except tho[...] items 2. and 3. are those shown in the **Declaratio**[...] this option.

**SF- Finch**    SF-00116

Option OL - Building Ordinance or Law.

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations.**

   a. We will not pay for any increased cost of construction under this coverage:

      (1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

   b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

      (1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

      (2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

   c. We will not pay more under this coverage than the amount you actually spend:

      (1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

24          **SF- Finch**

                 SF-00117          FP-7955

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item h., for theft of silverware and goldware increased to be the amount shown in the Declarations this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Blooming Illinois.

*Kim M. Brunner*                     Secretary                     *Edward B Rust Jr*                     Presi

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distri equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment proper.

**SF- Finch**

25                     SF-00118                     FP

IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

CIVIL ACTION NO.: $CV() - 26C$

WYATT FINCH, individually,

     Plaintiff

vs.

> FILED
>
> SEP 19 2007

STATE FARM FIRE AND CASUALTY COMPANY, a corporation; DONNY HOLLEY, individually **No. 1**, whether singular or plural, that entity who or which sold any policy to Plaintiffs prior to the incident made the basis of this lawsuit; **No. 2**, whether singular or plural, that entity who or which, as an agent, sold any policy to the plaintiffs made the basis of this lawsuit; **No. 3**, whether singular or plural, Plaintiffs hereby intending to designate that certain insurance agency which, through its agents or otherwise, sold plaintiffs any policy made the basis of this suit; **No. 4**, whether singular or plural, that entity who or which, through agents or otherwise, marketed to Plaintiffs any policy on or before the filing of this lawsuit; **No. 5**, whether singular or plural, Plaintiffs hereby intending to designate that certain insurance company which issued, insured, or participated in the matters alleged herein; **No. 6**, whether singular or plural, that entity who or which sold to Plaintiffs any insurance policy **No. 9**, whether singular or plural, that entity who or which was a representative, managing general agent, agent, claim specialist and/or underwriter for any insurance company which in any way may be involved with Plaintiffs' insurance policies ; **No. 10**, whether singular or plural that entity who or which, as described above, is the predecessor corporation of any of the entities described above or in the body of the complaint; and **No. 11**, whether singular or plural, that entity who or which, as described above, is the successor corporation of any of the entities described herein; and **No. 12** whether singular or plural, that entity who or which had any involvement with the denial of said claims. (Plaintiff avers that the identities of the Fictitious Party Defendants herein are otherwise unknown to the Plaintiff at this time or, if their names are known to Plaintiff at this time, their identities as proper party defendants are not known to the plaintiff at this time, and their true names will be substituted by amendment when ascertained.);

Defendants.



PENGAD 800-631-6989

EXHIBIT

B

## COMPLAINT

1.  Wyatt Finch is an individual over the age of nineteen (19) years and a resident of Chambers County, Alabama at the time of the occurrence made the basis of this suit.

2.  State Farm Fire and Casualty Company (hereinafter referred to as "State Farm") is a corporation doing business in Chambers County, Alabama.

3.  Donny Holley, (hereinafter referred to as "Mr. Holley"), individually and as an agent, representative and employee of State Farm is a resident of Chambers County, Alabama and does business in Chambers County, Alabama.

4.  The real property made the basis of this litigation is situated in Chambers County, Alabama. The actions complained of took place in Chambers County, Alabama.

### FACTS

5.  Prior to April 19, 2006, defendant, Mr. Holley procured, for valuable consideration, a policy of homeowners insurance for the plaintiff for his real property located at 25 Gaylor Street, Valley, Alabama 36854. Defendant, State Farm, wrote said policy of insurance. Additionally, said policy of insurance provided coverage for the "dwelling," including wind damage and hail damage.

6.  The contract of insurance, procured by Mr. Holley, through State Farm, obligated State Farm to provide insurance coverage on the plaintiff's dwellings in the event of a covered loss.

7.  On or about April 19, 2006, the plaintiffs' home was damaged by wind and hail.

8.  State farm sent an adjuster to the Plaintiffs' property who notified the plaintiffs that their roof could be fixed with patching only. Said adjuster refused to pay for the true cost of repairs to the Plaintiffs' property.

9.   State Farm sent an adjuster to the plaintiff's properties who then wrote an estimate indicating that the plaintiff had suffered no damage.

10.  The plaintiff then obtained an several estimates showing extensive damage to the plaintiff's properties and submitted them to the adjuster for review and consideration.

11.  At that time, the adjuster amended his estimate and offered to pay for a portion of the plaintiff's covered damages but failed to pay the full value of the plaintiff's claims or to offer the full value of the plaintiff's claims.

12.  The actions of the adjuster and State Farm were part of a pattern and practice of underpaying or denying valid claims as a cost saving measure to the defendant State Farm.

13.  State Farm engaged in a pattern and practice to victimize other similarly situated individuals in the same manner as it did the plaintiff.

## COUNT I

14.  State Farm entered into a contract with the plaintiff. State Farm breached said contract. Pursuant to the terms and conditions of the plaintiff's contract, wind damage and hail damage are covered perils. The plaintiff's home became damaged by wind and hail, State Farm refused to extend payment for the damage, and State Farm breached its contract with the plaintiffs.

## COUNT II

15.  State Farm had a duty imposed by law to exercise good faith and fair dealings in the performance of the contractual obligations under the terms of the aforesaid policy of insurance. This duty was breached, either in that State Farm had no arguable basis for denying the claim for wind and hail damage or in that it failed to adequately investigate said claim, and denied it without determining whether there was any arguable basis for denying it. This conduct amounts to bad faith and unfair dealings.

16.  State Farm acted in bad faith.

## COUNT III

17.  Mr. Holley negligently or wantonly procured the policy of insurance on the plaintiff's home.  When the policy was procured, Mr. Holley personally inspected the home.  When Mr. Holley sold the policy of insurance to the plaintiff, he negligently or wantonly informed the plaintiff that wind and hail damage were covered perils.  According to State Farm, it was not.

WHEREFORE, Plaintiffs request that the jury selected to hear this case render a verdict in their favor, and against each defendant, separately and severally, and that it award damages to them in an amount which will adequately compensate them for the injuries and damages sustained due to the defendants' actions. Also, on the basis of the foregoing, Plaintiffs request that a jury be selected to hear this case and render a verdict for plaintiffs, and against the defendants, and that it award damages to plaintiffs in an amount which will adequately reflect the enormity of the defendant's wrong, and which will effectively prevent other similarly caused acts.  Further, Plaintiffs request that the Court enter judgment consistent with the jury's verdict, and that it also award the plaintiffs interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

Nick Wooten
David Hodge
Attorneys for Plaintiffs

OF COUNSEL:

WOOTEN LAW FIRM, P.C.
Trial Lawyers
P.O. Drawer 290
Lafayette, Al. 36862
(334) 864-2132
(334) 864-2133 facsimile

PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a struck jury for the trial of this case.

_____
Attorney for Plaintiffs

## DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:

State Farm
c/o Tom Lakin
100 State Farm Parkway
Birmingham, AL 35297-0001

## TO BE SERVED CERTIFIED MAIL RESTRICTED DELIVERY:

Donny Holley
2105 Broad Avenue # A
Lanett, AL 36863

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

| | |
|---|---|
| WYATT FINCH, JR., | ) |
| | ) |
| **Plaintiff** | )    **CIVIL ACTION NO:** |
| | )    CV- 07- ___ 266 ___ |
| **vs.** | ) |
| | ) |
| STATE FARM FIRE AND CASUALTY | ) |
| COMPANY, DONNY HOLLEY, et al. | ) |
| | ) |
| **Defendants.** | ) |

SEP 1 9 2007

### NOTICE OF TAKING DEPOSITIONS

NOTICE TO:      **Donny Holley**
                     **2105 Broad Ave # A**
                     **Lanett, AL  36863**

PLEASE TAKE NOTICE that, pursuant to Alabama Rules of Civil Procedure, Plaintiff

will take the **video** deposition of the following persons: **Donny Holley**, upon oral examination

before an officer authorized by law to administer oaths.

DATE:         **Wednesday, November 28, 2007**

TIME:         **9:30 a.m. CT**

PLACE:      **Wooten Law Firm**
                **10 2nd Ave. SE**
                **LaFayette, AL  36862**

Said deposition shall continue until completed, you are invited to attend and cross-examine.

Filed this the 12th day of _September_ 2007.

EXHIBIT

C

PENGAD 800-631-6989

_(signature)_

Nicholas H. Wooten (WOO084)
Attorney for the Plaintiff

OF COUNSEL:

WOOTEN LAW FIRM, P.C.
P.O. Drawer 290
LaFayette, Alabama 36862
(334) 864-2132
Fax: 864-2133

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the Defendants on this the _____ day of _____ 2007 by the following method(s): **U.S. Mail**

_(signature)_

OF COUNSEL

## IN THE CIRCUIT COURT OF CHAMBERS COUNTY, ALABAMA

| | |
|---|---|
| WYATT FINCH, JR., | ) |
| | ) |
| **Plaintiff** | )    **CIVIL ACTION NO:** |
| | )    CV- 07- _266_ |
| **vs.** | ) |
| | ) |
| STATE FARM FIRE AND CASUALTY | ) |
| COMPANY, DONNY HOLLEY, et al. | ) |
| | ) |
| **Defendants.** | )    SEP 19 2007 |

### PLAINTIFFS' FIRST INTERROGATORIES,
### AND REQUEST FOR PRODUCTION,
### TO DEFENDANT, STATE FARM FIRE AND CASUALTY COMPANY

Comes now the plaintiff, and pursuant to the Alabama Rules of Civil Procedure 33, 34, 36

requests that the defendant, STATE FARM FIRE AND CASUALTY COMPANY hereinafter

referred to as "this defendant"), answer and respond to the following interrogatories and requests for

production, within 45 days of the date the summons and complaint pertinent to this cause was

served on this defendant:

1. Please state this defendant's name correctly and/or the correct way this defendant should be designated as a party defendant in an action at law (at the time of the occurrence made the basis of this suit and at the time these interrogatories were answered).

2. Identify the individual responding to these interrogatories, including full name, age, date of birth, social security number, driver's license number, and job title.

3. Explain the relationship between this defendant and defendant, Donny Holley.

4. State the name and job title of any person who reviewed any claim, or any portion of any claim, made by plaintiffs for benefits.

5. State the name and job title of any person who participated in the decision to pay or not pay the claim by plaintiffs for benefits under the policy.

6.  State, in detail, this defendant's investigation of Plaintiffs' claim for benefits under the policy made the basis of this suit.

7.  Describe, in detail, any and all facts and/or evidence upon which this defendant based its denial of said claim.

8.  State the name and job title of any person employed by this defendant or acting as an agent for this defendant who was involved in the application process concerning plaintiffs' policy.

10. List, by company name, all documents, sales materials, brochures, or other similar materials provided to agents to assist them in the sale of policies such as the one made the basis of this suit.

11. State, in detail, this Defendant's procedure for evaluating, investigating, and denying claims.

12. State whether or not there have been, or are now, lawsuits pending against this defendant or its agent(s), in the State of Alabama for the last five (5) years claiming injury or damage due to breach of contract or bad faith failure to pay.  If so, for each such lawsuit state:

    (a)  The date of the filing of each such lawsuit.
    (b)  The court in which such lawsuit was filed.
    (c)  The action or court number of each such lawsuit.
    (d)  The name and addresses of all parties, including plaintiff and defendant to each such lawsuit.
    (e)  The disposition of each such lawsuit.
    (f)  The name and address of each person or entity having possession, control or custody of any or all records relating to such legal action against this defendant involving such a claim or similar claim.

13. Please state the name and address of each expert witness that you expect to call at the trial of this case and state the subject matter on which said experts are expected to testify.

14. Please state the substance of the facts, opinions and conclusions to which each and every expert is expected to testify in this case.

15. Please state the name and address of each witness you expect to call to testify at the trial of this case.

16. State, in detail each and every act taken and documents received in evaluating Plaintiffs' claim for benefits.

17. State the name, address and telephone number of any outside adjusting company who evaluated plaintiff's claim.

18.   State the name, address, telephone number, qualifications, curriculum vitae, of the person or entity who prepared any and all estimates of damage regarding plaintiffs' claim for damage.

## REQUESTS FOR PRODUCTION

1.   Any and all documents in your possession which in any way relate or refer to the plaintiffs.

2.   The entire claim file regarding the claim at issue in this case.

3.   All policies and procedures which in any way deal with the adjustment of property damage claims.

4.   All recorded conversations, in any form, whether transcribed or not, with any individual regarding the plaintiffs' claim.

_____
Nick Wooten
David Hodge
Attorneys for Plaintiffs

OF COUNSEL:

WOOTEN LAW FIRM, P.C.
Trial Lawyers
P.O. Drawer 290
Lafayette, AL 36862
(334) 864-2132
(334) 864-2133 facsimile

PITTMAN, HOOKS, DUTTON, KIRBY & HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
(205) 322-8880
(205) 328-2711 facsimile

## REQUEST FOR SERVICE

   Pursuant to ARCP 4.1 and 4.2, plaintiff requests service of the foregoing, along with the Summons and Complaint, by certified mail upon the defendants.

_____
Of Counsel for Plaintiff

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

State Farm
C/o Tom Lakin
100 State Farm Parkway
Birmingham, AL 35297-0001

**TO BE SERVED CERTIFIED MAIL RESTRICTED DELIVERY:**

Donny Holley
2105 Broad Avenue # A
Lanett, AL 36863

ORIGINAL

# IN THE CIRCUIT COURT OF CHAMBERS COUNTY ALABAMA

George Alford,                    )
    Plaintiff,                  )
                            )    CIVIL ACTION NO:
vs.                               )    CV 01-207
                            )
State Farm Insurance              )
Corporation and Donny             )
Holley,                           )
    Defendants.                 )

## ORDER ON POST-TRIAL MOTIONS

This matter came before the Court on a special setting to hear the post-trial motions filed by the defendants in this action on January 10, 2006.

### HISTORY

George Alford instituted suit against State Farm and one of its Chambers County agents, Donny Holley on August 23, 2001. The underlying claims in the lawsuit were for breach of contract, conversion and suppression. Thereafter discovery was undertaken and the matter was set for trial in the Circuit Court of Chambers County beginning on September 12, 2005. On that day a jury was qualified, sworn, struck, and impaneled without objection. This Court notes that at the close of the plaintiff's evidence the Court dismissed the counts claiming breach of contract and conversion and allowed the claim of suppression to go forward. On September 14, 2005, the duly empaneled jury delivered a verdict awarding compensatory damages against Donny Holley in the amount of $20,989.65 and punitive damages in the amount of $20,989.65 and awarding $30,000.00 compensatory damages and $970,000.00 in punitive damages against State Farm Life Insurance Company. All of the defendants timely filed post-trial motions on October 13, 2005. The defendants motion was styled as *"Renewal of motion for judgment as a matter of law and alternative motion for new trial and alternative motion to alter, amend or vacate the Judgment"*.

The Defendants' Renewal of Motion for Judgment as a Matter of Law and alternative Motion for New Trial and alternative Motion to Alter, Amend or Vacate the Verdict is hereby Denied.

Done and Ordered this 11th day of January 2006.



FILED IN OFFICE THIS

JAN 1 2 2006

CHARLES W. STORY
CIRCUIT CLERK
CHAMBERS COUNTY, ALABAMA

TOM F. YOUNG, JR.
Circuit Judge

EXHIBIT
D

IN THE CIRCUIT COURT OF
CHAMBERS COUNTY, ALABAMA

WYATT FINCH,                    )
                               )
        Plaintiff,             )
                               )
vs.                            )        Case No. CV-07-266
                               )
STATE FARM FIRE AND            )
CASUALTY COMPANY,              )
DONNY HOLLEY, et al.,          )
                               )
        Defendants.            )

## NOTICE TO STATE COURT OF
## REMOVAL OF ACTION TO FEDERAL COURT

To:    Charles W Story
       #2 LaFayette St.
       LaFayette, AL  36862-0000

       Please take notice that Defendants, State Farm Fire and Casualty Company, and

Donny Holley  have this date filed a Notice of Removal, a copy of which is attached

hereto as Exhibit "A," in the Office of the Clerk of the United States District Court

for the Middle District of Alabama, Eastern Division.

_____
JAMES H. ANDERSON [AND021]
MICHEAL S. JACKSON [JAC015]
Counsel for Defendant State Farm Fire and
Casualty Company



**Of Counsel:**
BEERS, ANDERSON, JACKSON,
  PATTY, & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama  36102-1988
Tel:  (334) 834-5311 / Fax:  (334) 834-5362

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by depositing a copy of same in the U.S. Mail, postage prepaid, addressed as follows:

Nick Wooten, Esq.
WOOTEN LAW FIRM, P.C.
P. O. Drawer 290
Lafayette, AL 35862

David Hodge , Esq.
PITTMAN, HOOKS, DUTTON, KIRBY
& HELLUMS, P.C.
1100 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203

on this the 23rd day of October, 2007.

Of Counsel

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000882
Cashier ID: brobinso
Transaction Date: 10/24/2007
Payer Name: BEERS ANDERSON JACKSON PATTY
------------------------------------
CIVIL FILING FEE
 For: BEERS ANDERSON JACKSON PATTY
 Case/Party: D-ALM-3-07-CV-000952-001
 Amount:          $350.00
------------------------------------
CHECK
 Remitter: BEERS ANDERSON
 Check/Money Order Num: 29100
 Amt Tendered:  $350.00
------------------------------------
Total Due:          $350.00
Total Tendered: $350.00
Change Amt:       $0.00

DALM307CV000952-MHT

WYATT FINCH V STATE FARM FIRE ET AL

BEERS ANDERSON

P O BOX 1988
MONTGOMERY, AL  36102