IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED
2007 OCT 23 P 3: 11

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| WYATT FINCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:07cv952-MHT |
| | ) | |
| STATE FARM FIRE AND | ) | |
| CASUALTY COMPANY, | ) | |
| DONNY HOLLEY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT DONNY HOLLEY'S MOTION TO DISMISS

COMES NOW Defendant (Donny Holley)and moves this Court to dismiss

Count Three of Plaintiff's Complaint[1] pursuant to Rule 12(b)(6), *Federal Rules of*

*Civil Procedure.*   Count Three of Plaintiff's Complaint fails to state a claim against

Holley upon which relief can be granted. Plaintiff can prove no set of facts in support

of any allegation set forth in Count Three of the Complaint that would entitle him to

relief against Holley.  In support thereof,  Defendant Holley states as follows:

## INTRODUCTION

Plaintiff's Complaint arises from his submission of a claim to State Farm Fire

and Casualty Company regarding storm  damage to his home.  Plaintiff's Complaint

---

[1] Count Three is the only Count of the Complaint asserted against Holley.

alleges Defendant Holley negligently or wantonly procured the policy of insurance

on Plaintiff's home. Plaintiff's Complaint also alleges breach of contract and bad

faith against Defendant State Farm. As will be demonstrated below, even when this

allegation is viewed most strongly in Plaintiff's favor, Defendant Holley contends

that there is no circumstance which would entitle Plaintiff to relief.

## II. ARGUMENT

### A.    MOTION TO DISMISS STANDARD

On May 21, 2007, the United States Supreme Court issued *Bell Atlantic v.*

*Twombly*, 550 U.S. _____(2007), 127 S.Ct. 1955, 2007 WL 1461066 (U.S.),

effectively redefining the standard for a Rule 12(b)(6) Motion to Dismiss. Prior to

*Twombly*, the standard for analyzing a motion to dismiss was set forth in *Conley v.*

*Gibson*, 355 U.S. 42(1957). *Conley* stated that "[a] complaint should not be

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 45-46. In *Twombly*, the Court revisited *Conley* and set forth the following

standard for motions to dismiss:

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations ... a
> plaintiff's obligation to provide the 'grounds' of his
> 'entitlement to relief' requires more than labels and
> conclusions, and a formulaic recitation of the elements of

> the cause of action will not do ... Factual allegations must
> be enough to raise a right to relief above the speculative
> level ... on the assumption that all the allegations in the
> complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 1964-68. The Court further noted that the plaintiff must present plausible grounds to state a claim for relief, specifically stating that "something beyond a mere possibility of loss causation" must be pled to satisfy Rule 8. *Id.* at 1968-69 (citing *Dura Pharmaceuticals Inc. v. Broudo*, 544 U.S. 336 (2005)). Even though *Twombly* was an anti-trust case, the Court expressly rejected the previous "no set of facts" standard enumerated by *Conley*, *supra*, a labor law case, thereby suggesting this new standard for deciding motions to dismiss is applicable to all cases, not merely those sounding in anti-trust. The Court's earlier standard was more generous to the plaintiff in that a Motion to Dismiss would only be granted if "no set of facts" could support a plaintiff's claims. The emphasis on the "no set of facts" language encouraged denial of a motion to dismiss on any facts presented by a plaintiffs regardless of their implausibility. In discrediting the *Conley* opinion Justice Souter wrote:

> [T]here is no need to pile up further citations that Conley's
> 'no set of facts' language has been questioned, criticized
> and explained away long enough .... [A]fter puzzling the
> profession for 50 years, this famous observation has earned
> its retirement. The phrase is best forgotten as an
> incomplete, negative gloss on an accepted pleading

> standard: once a claim has been stated adequately, it may
> be supported by any set of facts consistent with the
> allegations in the complaint... Conley, then, described the
> breadth of opportunity to prove what an adequate
> complaint claims, not the minimum standard of adequate
> pleading to govern a complaint's survival.

*Id.* at 1969. *Twombly* did not seek to heighten the pleading standards but required

"only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

Because the Plaintiff in this case has failed to plead his claims against Defendant

Holley "across the line from conceivable to plausible", the allegations against Holley

are due to be dismissed. *Id.* at 1974.

**B.    ALLEGATIONS AGAINST HOLLEY**

A review of all the allegations against Holley in Plaintiff's Complaint reveals

why the Complaint fails to state a claim against Holley.  First,  Plaintiff asserts

Defendant Holley procured a homeowner's insurance policy for Plaintiff's home and

that State Farm issued the homeowners policy which specifically provided coverage

for wind and/or hail damage. (Complaint, ¶ 6).  These assertions confirm Plaintiff

wanted a policy which provided coverage for wind and/or hail damage, that

Defendant Holley procured said policy and that State Farm indeed issued said policy

to Plaintiff.  Plaintiff then claims  in Count Three that Defendant Holley negligently

or wantonly procured the policy of insurance because State Farm did not pay for wind

and hail damage but Holley informed Plaintiff the policy he purchased provided coverage for wind and/or hail. Since Plaintiff desired a homeowners policy which provided coverage for wind and/or hail damage and Defendant Holley procured a homeowners policy for Plaintiff which provided said coverage, Defendant Holley was not negligent or wanton in the procurement of the policy. The State Farm homeowners policy issued to Plaintiff specifically provides coverage for the accidental direct physical loss to the insured property which includes wind and/or hail damage:[2]

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

(Exhibit "A," p. 7). Since Defendant Holley procured the exact policy Plaintiff requested then Plaintiff has wholly failed to assert a plausible claim of negligent or wanton procurement against Defendant Holley.

Plaintiff appears to suggest in his Complaint that because State Farm allegedly

---

[2] Attached as Exhibit "A" is a copy of Plaintiff's homeowners policy. The attachment of said policy declaration page to this motion to dismiss does not convert said motion into a motion for summary judgment. *Deerman v. Federal Home Loan Mortgage Corp.*, 955 F.Supp. 1393, 1397 (N.D. Ala. 1997). *See also Holyfield v. Moates*, 565 So.2d 186 (Ala. 1990).

denied his claim for wind and/or hail damage then the only reason for said denial was because the policy did not provide coverage for said type of loss; i.e. Holley negligently or wantonly procured his policy. (Complaint, ¶ 17) To the contrary, as set forth in the policy language above, the Plaintiff's policy of insurance does provide insurance benefits for wind and/or hail damage if that type of loss actually occurred. State Farm's alleged denial of Plaintiff's insurance claim does not automatically equate to negligent or wanton procurement on the part of Holley. Based on the plain language of the Complaint, Plaintiff has failed to assert a plausible claim of negligent or wanton procurement.

The Court in *Twombly* was clear that the new standard now requires the trial court to consider the likelihood of the allegations, to not only weigh the allegations against the law, but also against logic. *See generally Twombly.* The new standard requires the Court to determine whether enough facts have been stated in the Plaintiff's Complaint to conclude that it is plausible that the Plaintiff is entitled to relief, not merely that relief is remotely possible. *Id.* at 1968 - 1969. In the case sub judice, Plaintiff's allegations fail to present plausible evidence to even suggest why he is entitled to relief. While Plaintiff may argue his claim against Holley is remotely possible, the claim is wholly implausible, thereby warranting dismissal under the newly established standard set forth in *Twombly.* "When the allegations in a

complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be ... exposed at the point of minimum expenditure of time and money by the parties and the Court.'" *Id.* at 1966. Count Three of Plaintiff's Complaint against Defendant Holley should be dismissed for failure to state a claim upon which relief can be granted.

## CONCLUSION

Plaintiff's claims against Defendant Holley for negligent or wanton procurement are due to be dismissed as the Complaint shows on its face that Holley in fact procured a policy which covers wind and hail damage, and, therefore, cannot be liable for negligent failure to procure. Plaintiff's Complaint does not allege that State Farm denied the claim because there was wind and hail and that the policy does not cover wind and hail. The fact State Farm denied the claim -- if it did -- does not change the policy terms and does not remove coverage for wind and hail from the policy. The denial -- if it happened -- subjects State Farm to an action for breach of contract and, if warranted, bad faith; but the denial -- if it happened -- does not

subject Holley to an action for negligent/wanton failure to procure when the policy

clearly provides that coverage.  Therefore, Holley is due to be dismissed.

**JAMES H. ANDERSON [AND021]**
**MICHEAL S. JACKSON [JAC015]**
Attorneys for Donny Holley


**OF COUNSEL:**

BEERS, ANDERSON, JACKSON,
  PATTY & FAWAL, P.C.
P. O. Box 1988
Montgomery, Alabama  36102-1988
(334) 834-5311
(334) 834-5362 fax

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by depositing a copy of same in the U.S. Mail, postage prepaid, addressed as follows:

Nick Wooten
WOOTEN LAW FIRM, P.C.
P. O. Drawer 290
Lafayette, AL 35862

David Hodge
PITTMAN, HOOKS, DUTTON, KIRBY
 & HELLUMS, P.C.
1100 Park Place Tower, 2001 Park Place N.
Birmingham, Alabama 35203

on this the ____23rd____ day of October, 2007.

OF COUNSEL

**State Farm Fire and Casualty Company**

Home Office, Bloomington, Illinois 61710



**Birmingham Operations Center**
100 State Farm Parkway
P.O. Box 2661
Birmingham, Alabama 35297-0001

CERTIFICATE

I, the undersigned, do hereby certify that I am custodian of the
records pertaining to the issuance of policies issued by the
Personal Lines Division of State Farm Fire & Casualty Company,
a stock company with home offices in Bloomington, Illinois.

Based on our available records, I further certify that the attached
coverage summary  dated OCT 17, 2005 represents a true copy of
the policy provisions and coverages as of NOV 30, 2005 for policy
01-B5-3572-8 issued to  FINCH, WYATT JR
                        25 GAYLOR ST
                        VALLEY AL  36854-4322


Bill Lovell
Underwriting Section Manager
State Farm Fire & Casualty Company
Birmingham Operation Center
Birmingham AL  35297-0001

EXHIBIT
"A"

**SF- Finch**
SF-00063

**STATE FARM INSURANCE COMPANIES®**

State Farm Fire and Casualty Company

100 State Farm Parkway
Birmingham, AL 35297-0001

B-09- 1520-F282  F H

FINCH, WYATT JR
25 GAYLOR ST
VALLEY AL  36854-4322

I**||**II**I**I**I**I**I**I**I**I**I**I**I**I**I**I**I**I**I**I**I**I

Location:  Same as Mailing Address

SFPP No: 0041406409

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955 |
| Ordinance/Law  10%/  $16,400 | OPT  OL |
| Increase Dwlg up to $32,800 | OPT  ID |
| Jewelry and Furs $1,500/$2,500 | OPT  JF |
| Amendatory Endorsement | FE-7201.2 |
| Earthquake Endorsement | FE-7301.4 |
| Policy Endorsement | FE-5320 |
| Fungus (Including Mold) Excl | FE-5398 |
| Motor Vehicle Endorsement | FE-5452 |
| Amend Subrogation Condition | FE-5843 |

191-3388.6.1  Rev. 05-2003  Printed in U.S.A.

---

**RENEWAL CERTIFICATE**

POLICY NUMBER    01-B5-3572-8

Homeowners Policy
NOV 30 2005  to  NOV 30 2006

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| BILLED THROUGH SFPP | |

**Coverages and Limits**
**Section I**

| | | |
|---|---|---|
| A  Dwelling | | $164,000 |
| Dwelling Extension | Up To | 16,400 |
| B  Personal Property | | 123,000 |
| C  Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

| | |
|---|---|
| Other Losses | 1,000 |
| Except  5% Earthquake | |

**Section II**

| | |
|---|---|
| L  Personal Liability | $300,000 |
| Damage to Property of Others | 500 |
| M  Medical Payments to Others | 5,000 |
| (Each Person) | |

**Annual Premium**                    $1,096.00

**Premium Reductions**
Your premium has already been reduced
by the following:
    Claim Free Discount                    232.00

Inflation Coverage Index:   194.8

SF- Finch
SF-00064

☎ 38 3335 9092
*See reverse side for important information.
Please keep this part for your record.*

*Thanks for letting us serve you. We appreciate our long term customers.*
DONNY HOLLEY
(334) 644-2111            Prepared  OCT 17 2005

---

| IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT. | B-1520-F282  F | NOTE: DO NOT PAY - PREMIUM BILLED THROUGH STATE FARM PAYMENT PLAN. |
|---|---|---|
| INSURED  FINCH, WYATT JR | | |

| | | |
|---|---|---|
| POLICY NUMBER | 01-B5-3572-8 | HO - HOMEOWNERS |

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
| THIS IS FOR INFORMATION ONLY | |

Please contact your State Farm
Agent to make any policy
changes.

09095 12301
State Farm Insurance Companies

138-3076.15  Rev. 02-2001  Printed in U.S.A.  161t0081t

FOR OFFICE USE ONLY    4976    201    I
Prepared  OCT 17 2005
N  1V,3A,HU

REP          FIRE BEN                          1230

000536400000000    401101253572801509>

**CONTINUED FROM FRONT**

Mortgagee:  COLONIAL BANK NA
ITS SUCCESSORS AND/OR ASSIGNS

**Your coverage amount....**
It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an estimate from Xactware, Inc. using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

**Discounts and Rating -** The longer you are insured with State Farm, and the fewer claims you have, the lower your premium. For policyholders insured by State Farm for three or more years, the Claim Free Discount Plan provides a premium discount if you have not had any claims considered for rating in the most recent three-year period since becoming insured with State Farm. Premium adjustments under the Claim Record Rating Plans are based on the number of years you have been insured with State Farm and on the number of claims that we consider for rating. Depending on the Plan(s) that applies in your state/province, claims considered for rating generally include claims resulting in a paid loss and may include weather-related claims. Additionally, depending on your state/province's plan and your tenure with State Farm, any claims with your prior insurer resulting in property damage or injury may also influence your premium. For further information about whether a Claim Free Discount is in effect in your state/province, the Claim Record Rating Plan that applies in your state/province, and the claims we consider for rating, please contact your State Farm agent.                                                                    Rev. 01-13-2004   (o1f307ba)

**NOTICE TO POLICYHOLDER:**
For a comprehensive description of coverages and forms, please refer to your policy.
Policy changes requested before the "Date Prepared", which appear on this notice, are effective on the Renewal Date of this policy unless otherwise indicated by a separate endorsement, binder, or amended declarations. Any coverage forms attached to this notice are also effective on the Renewal Date of this policy.
Policy changes requested after the "Date Prepared" will be sent to you as an amended declarations or as an endorsement to your policy. Billing for any additional premium for such changes will be mailed at a later date.
If, during the past year, you've acquired any valuable property items, made any improvements to insured property, or have any questions about your insurance coverage, contact your State Farm agent.
Please keep this with your policy.
(o1f008qf)  Rev. 10-2003        (o1f313a)

**IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT. IF THIS IS NOT CONVENIENT, PLEASE COMPLETE THE FOLLOWING.**

Street or R.R. _____     Residence Phone No. _____

City _____  State/Province _____  ZIP/Postal Code _____  Business Phone No. _____

Township _____  County _____    ☐ Inside City Limits   ☐ Outside City Limits

Is change:  ☐ Permanent  ☐ Temporary   If temporary, how many months? _____    Do you plan to return to your previous address?  ☐ Yes  ☐ No

☐ Mailing address change only    ☐ Location change  (Please see your State Farm agent)    ☐ Check box if change applies to **ALL** State Farm policies in household.

*(Auto Policyholders Only)*
Is the vehicle driven to and from work/school?  ☐ Yes   ☐ No
If the answer is "yes", what is the average weekly mileage for such use?  _____

                                                                                                                        (o1f008qf)

**SF- Finch**
SF-00065



STATE FARM INSURANCE COMPANIES

State Farm Fire and Casualty Company
100 State Farm Parkway
Birmingham, AL 35297-0001

B-09- 1520-F282 F  H

POLICY NUMBER    01-B5-3572-6

**HOMEOWNERS AVAILABLE COVERAGE NOTICE**

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
|  | SEE RENEWAL CERTIFICATE |

FINCH, WYATT JR
25 GAYLOR ST
VALLEY AL  36854-4322

IuIluIluIuIuIuIuIuIuIIuIIuIuIuIuIIuIluIluI

IT IS IMPORTANT THAT YOU OCCASIONALLY REVIEW THE COVERAGES AND LIMITS IN YOUR HOMEOWNERS POLICY TO BE CERTAIN YOUR NEEDS ARE BEING MET.  THE FOLLOWING INFORMATION WILL ASSIST YOU IN THE REVIEW PROCESS.

THE COVERAGE LIMITS FOR COVERAGE A - DWELLING, COVERAGE B - PERSONAL PROPERTY, COVERAGE L - PERSONAL LIABILITY, AND COVERAGE M - MEDICAL PAYMENTS TO OTHERS ARE LISTED ON THE ACCOMPANYING RENEWAL NOTICE.  PLEASE REVIEW THESE LIMITS TO DETERMINE IF THEY ARE ADEQUATE IN THE EVENT OF A LOSS.

THE FOLLOWING IS A **PARTIAL LIST** OF THE OPTIONAL COVERAGES YOU HAVE **NOT** ADDED TO YOUR POLICY. THEY MAY BE AVAILABLE TO YOU FOR AN ADDITIONAL PREMIUM.

Back-Up of Sewer or Drain (for damage caused by water from outside the plumbing system which backs up through sewers or drains)

Building Ordinance or Law (higher limits)

Business Property (for higher limits)

Business Pursuits Liability (for teachers, school administrators, sales persons, and clerical workers)

Child Care Liability (for those providing child care in their home)

Firearms (for broadened coverage and higher limits)

Home Computers (for higher limits)

Incidental Business Liability (for those with an incidental office, studio, or school in the home)

Jewelry and Furs (for broadened coverage and higher limits)

Loss Assessment (for neighborhoods with Homeowners Associations)

Nurses Professional Liability (for those in the nursing profession)

Personal Injury (for your liability to others caused by certain acts of libel, slander, invasion of privacy, false arrest)

Silverware/Goldware (for broadened coverage and higher limits)

**This notice contains only a general description of the coverages and is not a contract.  All coverages are subject to the provisions in the policy itself.**  Should you have a need for any of these coverages or higher limits, contact your State Farm Agent to discuss details, cost and eligibility.

***Special Notice***
If you have a need for Flood Insurance, contact your agent to determine if you are eligible for coverage through the National Flood Insurance Program.  A separate application is required.

DONNY HOLLEY                                              Please keep this part for your record.
(334) 644-2111
                                                          Prepared    OCT 17 2005

IF YOU HAVE MOVED, PLEASE CONTACT YOUR AGENT

| DATE DUE | PLEASE PAY THIS AMOUNT |
|---|---|
|  | SEE RENEWAL CERTIFICATE |

SEE RENEWAL CERTIFICATE FOR PREMIUM NOTICE

SF- Finch
SF-00066

9110086a  Rev  02-2001

FOR OFFICE USE ONLY    4975

Prepared   OCT 17 2005
N   1V,3A,HU                                              REP

FE-7201.2
(10/97)

# AMENDATORY ENDORSEMENT
## (Alabama)

**SECTION I - CONDITIONS**

**Suit Against Us:** Reference to "one year" is changed to "six years".

**SECTION I AND SECTION II - CONDITIONS**

**Right to Inspect** is added:

**Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a.  make safety inspections;

b.  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c.  warrant that conditions are safe or healthful; or

d.  warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**Joint and Individual Interests** is added:

**Joint and Individual Interests.** When there are two or more named insureds, each acts for all to cancel or change the policy.

All other policy provisions apply.

**SF– Finch**

SF-00067

Printed in U.S.A.

FE-7301.4
(7/00)

## EARTHQUAKE AND VOLCANIC EXPLOSION ENDORSEMENT

1. **SECTION I - LOSSES NOT INSURED** references to earthquake and volcanic explosion are deleted. Such insurance as is afforded by Section I of the policy is extended to insure for accidental direct physical loss caused by earthquake or volcanic explosion.

2. We do not insure under this endorsement for loss caused by or resulting from any earthquake or volcanic explosion that begins before the inception of this endorsement.

   But, if this endorsement replaces earthquake insurance that excludes loss that occurs after the expiration of the policy, we will pay for loss or damage by earthquake, or volcanic explosion that occurs on or after the inception of this endorsement, if the series of earthquake shocks or volcanic explosions began within 72 hours prior to the inception of this insurance.

3. All earthquake shocks or volcanic explosions that occur within any 72-hour period will constitute a single loss. The expiration of this policy will not reduce the 72-hour period.

4. **Deductible:** The deductible for loss caused by earthquake or volcanic explosion is the amount determined by applying the deductible percentage (%) shown in the **Declarations**, separately, to each of the following:

   a. the total **COVERAGE A - DWELLING** limit shown in the **Declarations**;

   b. the total **DWELLING EXTENSION** limit shown in the **Declarations**; and

   c. the total **COVERAGE B - PERSONAL PROPERTY** limit shown in the **Declarations**.

   We will pay only that portion of the loss which exceeds the separate deductibles calculated above. The minimum deductible for each occurrence is $250.

All other policy provisions apply.

**SF- Finch**

SF-00068

FE-7301.4
(7/00)

Printed in U.S.A.

**POLICY ENDORSEMENT**

(4/99)

### SECTION I AND SECTION II - CONDITIONS

*The following condition is added:*

**Premium.** The premium for this policy may vary based upon the purchase of other insurance from one of the State Farm affiliated companies.

*All other policy provisions apply.*

FE-5320
(4/99)

**SF- Finch**
SF-00069

FE-5398

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

The following definition is added:

"fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES INSURED**

Item 12.d. is replaced with the following:

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced with the following:

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

**SECTION I - LOSSES NOT INSURED**

Item 1.l. is replaced with the following:

l. wet or dry rot;

In Item 2., the following is added as Item g.:

g. Fungus. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

(2) any remediation of fungus, including the cost to:

(a) remove the fungus from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the fungus; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

Printed in U.S.A.



**SF- Finch**

SF-00070

FE-5452

## MOTOR VEHICLE ENDORSEMENT

DEFINITIONS

The definition of "motor vehicle" is replaced by the following:

"motor vehicle", when used in Section II of this policy, means:

a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

c. a "recreational vehicle" while off an insured location. "Recreational vehicle", means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device;

d. a "locomotive" while off an insured location. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an insured;

e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an insured while off an insured location;

f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

g. the following are not motor vehicles:

(1) a motorized land vehicle in dead storage on an insured location;

(2) a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.;

(3) a motorized golf cart while used for golfing purposes;

(4) a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration;

h. "leased" does not include temporary rental.

All other policy provisions apply.

FE-5452

**SF- Finch**

SF-00071

FE-5843

# AMENDATORY SUBROGATION CONDITION ENDORSEMENT

**SECTION I AND SECTION II - CONDITIONS**

**Subrogation** is replaced with the following:

a.  If any **insured** to or for whom we make payment under this policy has rights to recover damages from another, those rights are automatically transferred to us to the extent of our payment. We are subrogated to the full extent of our payment and our rights are not dependent on whether that **insured** is fully compensated for their loss or is made whole.  The application of a deductible under this policy shall not prevent any **insured** from being considered fully compensated or made whole.

b.  If any **insured** to or for whom we have made payment has not recovered from any party liable for the damages, that **insured** shall:

1) take no action after a loss prejudicing our rights under this contract;

2) keep these rights in trust for us;

3) sign and deliver any legal papers we need;

4) when we ask, take action through our representative to recover our payments;

5) cooperate with us in a reasonable manner.

c.  If any **insured** to or for whom we have made payment recovers from any other party liable for the damages:

1) that **insured** shall hold in trust for us the proceeds of the recovery; and

2) that **insured** shall reimburse us to the extent of our payment.

d.  Any **insured** may waive in writing before a loss all rights of recovery against any person.

**Subrogation** does not apply under **SECTION II** to **MEDICAL PAYMENTS TO OTHERS** or **Damage to Property of Others**.

FE-5843

**SF- Finch**

SF-00072

```
AL-MISS  (09)              PDQ - Name and Address              QNB001F0


F 01 B53572 8      Team/Div/Unit: MALIK BLAND'S TEAM                B
                                         Type: HO - HOMEOWNERS
Status: 01 NOT IN BILL CYCLE  R   Note  IV

Eff: 11-30-2005  Exp: 11-30-2006      Cov cease: 06-25-2006
Agt: 1520-F282  Name: HOLLEY, DONALD A      (Donny    ) Ph: 334-644-2111
                                         Addl interest: 01
   Insured                    1st Addl Type: MTG
N: FINCH, WYATT JR            Acct no: 7430300001
A: 25 GAYLOR ST               N: EMMCO LLC
C: VALLEY AL                  N: THE MORTGAGE SERVICE STATION
                              N: ITS SUCC AND/OR ASSIGNS ATIMA
                              A: 113 REED AVE
                 36854-4322   C: LEXINGTON SC

Ph: 337-756-6239 H
SSN 1: 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                 Zip: 29072-2016
DOB 1: 01-13-1948




   FPA: 009E01 EAST ALABAMA WATER AND FD




                    SFPP acct no: 0041406409

                                               07/10/10
PDQ screen: _____  Next system: PDQ_  Input screen _____    ID: NG8T
```

**SF- Finch**
SF-00073

AL-MISS  (09)                    PDQ - General Data                        QNB002T6


F 01 B53572 8  Name: FINCH, WYATT JR                Type: HO - HOMEOWNERS
Status: 01 NOT IN BILL CYCLE  R  Note  IV

Eff: 11-30-2005 EXP: 11-30-2006 Cov cease: 06-25-2006
Cnps: 2 Ratable: YES  Prem code: 2  Term: 98  Cancel eff date: 06-25-2006

Last entry date: 10-17-2005    LPU date: 06-28-2006           Stat agent: 1520


     Billing Information
Total premium:       1096.00

                              Acct renewal dt: 10-17-2005  B-10: N


                              Commission data
                  Occr Agt  Mgr CC Np Rate Ctl  Premium
                   1  1520             0  0     1096.00




                              Toof
                        01-11-2006 To 01-18-2006




SFPP acct no: 0041406409                              07/10/10
PDQ Screen: _____ Next system:  PDQ  Input screen ____     ID: NG8T


**SF- Finch**
SF-00074

```
AL-MISS  (09)              PDQ - Statistical                    QNB003B6


F 01 B53572 8   Name: FINCH, WYATT JR            SFPP acct no: 0041406409
   Eff: 11-30-2005  Exp: 11-30-2006
       PACE      Coverage                   Annual  Accounting      Sp Sb Pol
Ln  Index      Amount  Ded  Ded Liability  Premium  Premium    Zn Cov Cd Cd R
001 R-194.8    164000 1000       300000    1030.00             45 HO 1    W 1
002 R-194.8    164000 5%                      54.00            45 QB V    W 1
003             2500 1000                     12.00            45 JF      W 1
                                  Total     1096.00


Ln Eq Cl  BCEG  Certified BC  Improved BC Yr  Community BC  LPEX Subzn       R
001                                                             02          1
002  B                                                          02          1
003                                                             02          1
```

```
Forms and opt:  FP /7955                          ----Coverages-----
  LSP   B1       FE /7201/2     FE /7301/4     OPT   OL
  OPT   ID       LSP   A1       FE /5320       FE /5398     A30      123000
  FE /5452       FE /5843
                                                           A32      300000
                                                         --Med Pay Limits--
Risk no: 1   *** Overflow risk description data - F14 ***   A33        5000
   CNTY   009      CITY   Y850   TOWN C 5001   YR ISS 91   ZIP   368544322
   YR BLT 1989     RATEIV 127    CONST  V      RENYRS 9+   HM ALT SA
   MLD    N        UNITS  01     SFD D  1      HYDRA  Y
```

```
                                                          07/10/10
PDQ screen: _____  Next system: PDQ  Input screen ____    ID: NG8T
```

**SF- Finch**
SF-00075

```
AL-MISS  (09)                    PDQ - Statistical                    QNB003B6


F 01 B53572 8   Name: FINCH, WYATT JR              SFPP acct no: 0041406409
  Eff: 11-30-2005  Exp: 11-30-2006
        PACE      Coverage                  Annual  Accounting    Sp Sb Pol
Ln    Index       Amount Ded  Ded Liability Premium  Premium    Zn Cov Cd Cd R
001 R-194.8       164000 1000      300000    1030.00              45 HO  1  W 1
002 R-194.8       164000 5%                    54.00              45 QB  V  W 1
003                 2500 1000                  12.00              45 JF     W 1
                                    Total     1096.00


Ln Eq Cl  BCEG  Certified BC  Improved BC Yr  Community BC  LPEX Subzn      R
001                                                             02          1
002  B                                                          02          1
003                                                             02          1
```

```
Forms and opt:  FP /7955                     ----Coverages-----
 LSP   B1       FE /7201/2    FE /7301/4    OPT   OL
 OPT   ID       LSP   A1      FE /5320      FE /5398     A30      123000
 FE /5452       FE /5843
                                                         A32      300000
                                                     --Med Pay Limits--
Risk no: 1                                               A33        5000
  IV     1      RFTYPE S      20%CFD $232   GRP1    0
      QCLM  0   RATE V 112.03 ZONE V 10.00  SBZN V 10.00
  AD COV 1      EQ ZN  5      THFT D 0      RC     1
```

```
                                                        07/10/10
PDQ screen: _____ Next system: PDQ  Input screen _____  ID: NG8T
```

**SF- Finch**
SF-00076

```
AL-MISS  (09)           PDQ - Underwriting Screen              QNB004T0


F 01 B53572 8  Name: FINCH, WYATT JR              Type: HO - HOMEOWNERS
 Status: 01 NOT IN BILL CYCLE  R  Note   IV

Eff: 11-30-2005  Exp: 11-30-2006      Cov cease: 06-25-2006

Agt: 1520-F282  Name: HOLLEY, DONALD A        (Donny    ) Phone: 334-644-2111
                      Additional interests: 01  Yr blt: 1989  Yr iss: 1991


Forms and options:  FP /7955     HOMEOWNERS POL          Deductibles
  LSP   B1     LMT RPL COST-B               OTHER PERILS    1000
  FE /7201/2   AMENDATORY END               EARTHQUAKE       5%
  FE /7301/4   EARTHQUAKE END
  OPT   OL     ORDINANCE-LAW
  OPT   ID     COV A-INC DWLG
  LSP   A1     SMLR CONST-A
  FE /5320     POLICY END                          Coverages
  FE /5398     FUNGUS EXCL        Dwelling                      164000
  FE /5452     MOTOR VEHICLE      Dwelling extension             16400
  FE /5843     AMEND SUB COND     Contents          (A30)       123000

Total premium:  1096.00          Personal liability (A32)      300000
                                 Med pay per person (A33)        5000
---------- Und Reports -----------
Vend Report Result Score   Date
  I     G              12-07-1999
                                 CNPS: 2   TOOF: 01-11-2006 to 01-18-2006
                                 Pr Carr Loss: N
LNGTD: - 85.1719410   Loss history    Date of last CDQ: 09-28-2007
LATUD:   32.7858370              Claim         No Claims:  2
Match type:  A                  Number    Loss Date   Status
                                01X516836  04-19-2006  CLOSED
                                01B010485  03-05-1999  CLOSED


                                               07/10/10
PDQ screen: _____  Next system: PDQ  Input screen  _____   ID: NG8T
```

**SF- Finch**
SF-00077

AL-MISS  (09)                    PDQ - Notes                         QNB006D7


F 01 B53572 8      Name: FINCH, WYATT JR              Type: HO - HOMEOWNERS
 Agt: 1520-F282    Name: HOLLEY, DONALD A          (Donny      )


Roof: S  1600

              Photo: 10-07-1998


Contact planned for: 1997 AGENT  RE-INSPECTION
                     Satisfied: 07-02-1997

 Last reinspection: 01-24-2003      By: VENDOR          Entered: 04-08-2003

          Inactive notes exist - View using Trio Notes

 Pol Note  OK'ING INCR DUE TO ADDITION OF GARAGE & PORCH. 10/7/98 DK
     1:    Oper ID: GQC3  Date: 10-07-1998




                                                         07/10/10
 PDQ screen: _____   Next system: PDQ   Input screen: ____    ID: NG8T


SF- Finch
SF-00078

```
AL-MISS  (09)                 Claim History Review                    QNN542X3


Pol no: F 01 B53572 8  Insured: FINCH, WYATT JR              Oper: NG8T

Yr iss: 1991 Exp: 11-30-2006 Type: HO - HOMEOWNERS SAS:      Agt/AFO: 1520 F282

Status: 18 Prop amt:      164000 Ded:    OTHER PERILS    1000   No claims:    2

         Claim    Date of     Cause/
No      Number     Loss       Reason     Status
  1 01X516836  04-19-2006  35/HLC    CLOSED

        Reserve       Paid     Recovery    Expense    Mold Ind
         Amount      Amount     Amount      Amount     Amount
  1          0           0          0           0          0
                        INSURED FINCH, WYATT JR
Group Ind: N                              Initial dt closed: 05-02-2007
   DOL ded: OTHER PERILS    1000

  2 01B010485  03-05-1999  37/NC     CLOSED
  2          0        2876          0           0          0
                        INSURED FINCH, WYATT JR
Group Ind: 1                              Initial dt closed: 03-31-1999
   DOL ded: OTHER PERILS     250
```

```
                                              07/10/10
 Selections: _____        13:34:22
Next System: PDQ   PDQ screen: UND   Page:  1  @NG8T
```

**SF- Finch**
SF-00079

```
AL-MISS  (09)              Claim Detail Cause              QNN544T0



   Pol no: F 01 B53572 8      SAS:       Type: HO - HOMEOWNERS
 Insured: FINCH, WYATT JR               Agt: 1520 HOLLEY, DONALD A
          25 GAYLOR ST                  Exp: 11-30-2006
   Status: 18 NON-RECEIPT PREM   R   No claims:   2
 Yr iss: 1991                        Prop amt:    164000
     Ded:    OTHER PERILS   1000  EARTHQUAKE      5%


 Claim no: 01X516836       Dt of loss: 04-19-2006   Dt closed: 05-02-2007 RC:
   Pol no: F 01 B53572 8  Dt reported: 04-24-2007 Indem amt pd:        0.00
    Agent: 1520             Suit/ADR: Y/        Reserve amt:        0.00
     Type: HO - HOMEOWNERS  Cat code: RA        Expense amt:        0.00
     Unit:  4 8              Salvage: NO        Recovery amt:        0.00
   Status: CLOSED        Subrogation: NO        Mold ind amt:        0.00
                                            Claim off: MONTGOMERY OP CN

    Ins: FINCH, WYATT JR             Claimant:
         25 GAYLOR ST               Claimant dt of birth:
 Adjuster: ANGELA       B PIERCE        Adjuster phone no: 334-213-1082
 Und Rev:
 Group Ind : N                       Initial dt closed: 05-02-2007
     DOL ded: OTHER PERILS    1000



   Cause/Line: 35/HO          WIND OR HAIL - BUILDING
       Status: CWP           RESERVE CLOSED WITHOUT PAYMENT OR NO CLAIM
 Indem amt pd:        0.00  Reserve amt:        0.00 Loc no:
 Expenses pd:        0.00  Recovery amt:        0.00
      Comment: HL HAIL LOSS

   Cause/Line:
       Status:
 Indem amt pd:              Reserve amt:              Loc no:
 Expenses pd:              Recovery amt:
      Comment:

                                              07/10/10
 Next system: PDQ   PDQ screen: UND    Page:   1       @NG8T
```

```
AL-MISS  (09)     **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8     NAME FINCH, WYATT JR

                                              ENTRY    EFFECTIVE
                     TRANSACTION       OP ID   DATE      DATE       PREMIUM
           SKEL CNP (CANC NON-PAY)            06-28-2006 06-25-2006    547.98

           CNP NOTICE PRODUCED                06-05-2006

           SFPP PRECANCEL                     06-05-2006 06-25-2006    547.98

           SFPP CLEAR PRECANCEL              03-17-2006 03-27-2006    804.19

           CNP NOTICE PRODUCED                03-07-2006

           SFPP PRECANCEL                     03-07-2006 03-27-2006    804.19

           SFPP TOOF REINSTATEMENT            01-19-2006 01-18-2006   1075.18
               01-11-2006 TO 01-18-2006

           SKEL CNP (CANC NON-PAY)            01-16-2006 01-11-2006   1096.00

           CNP NOTICE PRODUCED                12-22-2005

           SFPP PRECANCEL                     12-22-2005 01-11-2006   1096.00

           SFPP CLEAR PRECANCEL              12-13-2005 12-26-2005   1096.00



                 *** OVERFLOW - PRESS PF14 ***
                                                        07/10/10
   PDQ SCREEN _____  NEXT SYSTEM PDQ  INPUT SCREEN _____  ID: NG8T
```

SF- Finch

SF-00081

```
AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                            ENTRY    EFFECTIVE
                      TRANSACTION      OP ID  DATE      DATE        PREMIUM
      CNP NOTICE PRODUCED                    12-06-2005

      SFPP PRECANCEL                         12-06-2005  12-26-2005    1096.00

      COVERAGE CHANGED AS FOLLOWS -    GG2N  11-29-2005
           1ST MORTGAGEE LOAN NUMBER ADDED

      1ST ADDITIONAL INTEREST CHANGED  GG2N  11-29-2005  11-29-2005
           LOAN NUMBER DELETED - NO PREV LOAN #

      1ST ADDITIONAL INTEREST CHANGED  GG2N  11-29-2005  11-29-2005
           OLD MTG - 0009680000

      PHONE NUMBER CHANGE FROM CR                        10-26-2005

      WRITTEN PREM AND COMM RELEASED         10-17-2005

      BILLING                                10-17-2005  11-30-2005    1096.00

      MTG ACTIVITY - 0009680000              09-14-2005

      1ST ADDITIONAL INTEREST CHANGED  GG2N  08-09-2005
           OLD MTG - 9094110005

      PHONE NUMBER CHANGE FROM CR                        12-10-2004

      SFPP CLEAR PRECANCEL                   12-09-2004  12-26-2004    1003.00


                  *** OVERFLOW - PRESS PF14 ***
                                                      07/10/10
      PDQ SCREEN _____    NEXT SYSTEM PDQ   INPUT SCREEN _____    ID: NG8T
```

**SF- Finch**

SF-00082

```
AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                           ENTRY    EFFECTIVE
                      TRANSACTION      OP ID  DATE      DATE        PREMIUM
CNP NOTICE PRODUCED                         12-06-2004

   SFPP PRECANCEL                           12-06-2004  12-26-2004    1003.00

   WRITTEN PREM AND COMM RELEASED           10-15-2004

   BILLING                                  10-15-2004  11-30-2004    1003.00

   SFPP CLEAR PRECANCEL                      06-10-2004  06-23-2004     401.02

   CNP NOTICE PRODUCED                       06-03-2004

   SFPP PRECANCEL                           06-03-2004  06-23-2004     401.02

   SFPP CLEAR PRECANCEL                      03-16-2004  03-25-2004     601.51

   CNP NOTICE PRODUCED                       03-05-2004

   SFPP PRECANCEL                           03-05-2004  03-25-2004     601.51

   WRITTEN PREM AND COMM RELEASED           10-16-2003

   BILLING                                  10-16-2003  11-30-2003     802.00

   MLD PENDED CHANGE EVALUATOR              10-07-2003  11-30-2003

   BILLING EXTRACT                          10-06-2003

   SFPP CLEAR PRECANCEL                      06-05-2003  06-23-2003     327.96


            *** OVERFLOW - PRESS PF14 ***
                                                    07/10/10
PDQ SCREEN _____   NEXT SYSTEM PDQ   INPUT SCREEN _____   ID: NG8T
```

SF- Finch

SF-00083

```
AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                          ENTRY     EFFECTIVE
                      TRANSACTION     OP ID   DATE      DATE         PREMIUM
CNP NOTICE PRODUCED                       06-03-2003

SFPP PRECANCEL                            06-03-2003  06-23-2003      327.96

REINSPECTION                    BDK6      04-08-2003  01-24-2003
        Vendor

SFPP CLEAR PRECANCEL                      12-06-2002  12-24-2002      653.04

CNP NOTICE PRODUCED                       12-04-2002

SFPP PRECANCEL                            12-04-2002  12-24-2002      653.04

DECREASE ENDORSEMENT            BDK6      11-08-2002  11-30-2002      218.00
        DEDUCTIBLES - SECTION I

WRITTEN PREM AND COMM RELEASED  BDK6      10-09-2002

BILLING                         BDK6      10-09-2002  11-30-2002      874.00

DECREASE ENDORSEMENT            BDK6      10-09-2002  09-19-2002        2.96
        HOME/AUTO DISCOUNT ADDED

MLD PENDED CHANGE EVALUATOR               10-08-2002  11-30-2002

BILLING EXTRACT                           10-07-2002

SFPP CLEAR PRECANCEL                      06-11-2002  06-24-2002      374.54

CNP NOTICE PRODUCED                       06-04-2002

                   *** OVERFLOW - PRESS PF14 ***
                                                        07/10/10
PDQ SCREEN _____  NEXT SYSTEM PDQ  INPUT SCREEN _____   ID: NG8T
```

SF- Finch

SF-00084

```
AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****        QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                          ENTRY    EFFECTIVE
                     TRANSACTION      OP ID   DATE      DATE        PREMIUM
         SFPP PRECANCEL                      06-04-2002 06-24-2002    374.54

         WRITTEN PREM AND COMM RELEASED      10-16-2001

         BILLING                            10-16-2001 11-30-2001    749.00

         WRITTEN PREM AND COMM RELEASED      10-13-2000

         BILLING                            10-13-2000 11-30-2000    698.00

         MLD PENDED CHANGE EVALUATOR         10-06-2000 11-30-2000

         BILLING EXTRACT                     10-05-2000

         FPA CHANGED                    AQ7Z 01-24-2000

         CODE CHANGE                    AQ7Z 01-24-2000 01-24-2000

         WRITTEN PREM AND COMM RELEASED      10-18-1999

         BILLING                            10-18-1999 11-30-1999    675.00

         SFPP CLEAR PRECANCEL                06-09-1999 06-23-1999    296.46

         CNP NOTICE PRODUCED                 06-03-1999

         SFPP PRECANCEL                      06-03-1999 06-23-1999    296.46


                   *** OVERFLOW - PRESS PF14 ***
                                                       07/10/10
         PDQ SCREEN _____   NEXT SYSTEM PDQ   INPUT SCREEN _____    ID: NG8T
```

**SF- Finch**

SF-00085

```
AL-MISS  (09)    **** PDQ - HISTORY OF TRANSACTION ****       QNB007B7

F 01 B53572 8    NAME FINCH, WYATT JR

                                           ENTRY    EFFECTIVE
                       TRANSACTION        OP ID   DATE      DATE        PREMIUM
1ST ADDITIONAL INTEREST CHANGED           AQ7Z  12-18-1998  12-17-1998
     OLD MTG - 6119000005

SFPP CLEAR PRECANCEL                              12-09-1998  12-24-1998    619.82

CNP NOTICE PRODUCED                              12-04-1998

SFPP PRECANCEL                                   12-04-1998  12-24-1998    619.82

DELAYED BILLING PROCESSED                        10-19-1998

WRITTEN PREM AND COMM RELEASED                   10-12-1998

BILLING                                   AOTV  10-12-1998  11-30-1998    593.00
     (DELAYED)

INS TO VALUE CHANGE                       AOTV  10-08-1998

INCREASE ENDORSEMENT                      AOTV  10-08-1998  09-28-1998     26.82
     SECTION I COVERAGE LIMITS CHANGED
     FORM NUMBER OR OPTION ADDED, CHANGED, OR DELETED
```

```
                                                        07/10/10
PDQ SCREEN  ____  NEXT SYSTEM PDQ   INPUT SCREEN  ____   ID: NG8T
```

**SF- Finch**

SF-00086

```
AL-MISS  (09)    **** HISTORY OF JOURNAL ACTIVITY SCREEN ****         QND536A2

01 B53572 8      NAME FINCH, WYATT JR                    TYPE HO - HOMEOWNERS

                                              REMITTER/    CROSS        BALANCE
                                               PAYEE     REFERENCE        DUE
JNL DATE JNL CO      AMOUNT          ACCOUNT
06-28-06 PCT  F      547.98 DR 020-04 CANC PREM
         PCT  F      547.98 CR 250-00 SFPP

01-19-06 PCT  F     1075.18 CR 010-04 WRIT PREM
         PCT  F     1075.18 DR 250-00 SFPP

01-16-06 PCT  F     1096.00 DR 020-04 CANC PREM
         PCT  F     1096.00 CR 250-00 SFPP

10-17-05 PCT  F     1096.00 CR 010-04 WRIT PREM
         PCT  F     1096.00 DR 250-00 SFPP
```

                                                          07/10/10
                                                          @NG8T

```
PDQ SCREEN HIST   NEXT SYSTEM PDQ
```

**SF- Finch**
SF-00087

CAR INDEX: 22 B5-35728  F  01

FIRE POLICY TRANSACTIONS - STREAMED
ALABAMA              AQA UNIT              AGT/AFO: 1520/F285
F 01-B5-3572-8  HO - HOMEOWNERS    EFF/EXP: 11-30-02 11-30-03 STATUS: 01
                                          MPP NO: 0041-4064-09

FINCH, WYATT JR                    CHGS INCL: DED
25 GAYLOR ST
VALLEY AL  36854-4322              INS PH: HOME (   ) 756-6239


EFF DATE: (11-30-02) RECD DATE: (11-08-02) WRTN DATE: (11-07-02) TIME: (04:07P)
**DEDUCTIBLE AND COVERAGE AMOUNT CHANGES** STREAMED

DEDUCTIBLES:
(1000)  ALL PERIL
SOURCE: ECHO AGT  HOLLEY, Donny              PHONE: 334-644-2111
                 INITIALS: (LS )

**SF- Finch**

SF-00088

STATE = AL

RFRIN026
STATE FARM INSURANCE COMPANIES
PPC MAPCHECK WORKSHEET
PPC FILE DATE 12-03-1999
12-07-1999

COUNTY NAME:    CHAMBERS

POLICY TYPE:    HOMEOWNER (FORM W)                    PRIMARY FLAGS: D

POLICY NUMBER: F-01-B5-3572-8    *F 34*                SECONDARY FLAG:  1

INSURED:       FINCH, WYATT JR                        PHONE:        756-6239

AGENT:         HOLLEY, DONALD A. 1520                 PHONE:    (334)644-2111

POLICY INFORMATION AS OF 12-07-1999                  CORRECTED INFORMATION

LOCATION ADDRESS:    25 GAYLOR ST

                     VALLEY AL

ZIPCODE:             368544322

COUNTY:              009, CHAMBERS

PROTECTION CLASS:    5                                *5*

FPA:                     E ALABAMA WATER AND FD       *009E01*

DISTANCE TO SFD:     1 MILES                          *1*

PRFPA:                                                            *DM 12/9*

TOWNCLASS INFO
  3RD DIGIT:         0                                *0*

  4TH DIGIT:         1                                *1*

ZONE VERIFICATION
  CURRENT ZONE:
GENERATED ZONE:

_____ INCREASE    _____ DECREASE    _____ NO CHANGE

COMMENTS:

APPROVED BY:_____DATE:_____

SF- Finch
SF-00089

**HOMEOWNER'S/CONDOMINIUM UNITOWNER'S APPLICATION**

☑ State Farm Fire and Casualty Company  ☐ State Farm General Insurance Company  ☐ State Farm Lloyds

OFFICE USE ONLY

| | | | |
|---|---|---|---|
| NEW ☑ LOT ☐ | COUNTRY HOME ☐ | COUNTRY OF POLICY NUMBER | EFFECTIVE DATE 11/30/91  TERM 1 YR. |

MPP  474 064  01

NAME (Please Print) LAST NAME: FINCH JR.  FIRST NAME: WYATT  MIDDLE: GEE

Mailing address: UNIT AND/OR STREET: 25 GAYLOR St.  CITY OR TOWN: Valley  STATE: AL  ZIP CODE: 36854

Location of dwelling (IF DIFFERENT FROM MAILING ADDRESS): ZIP CODE:  COUNTY: Chambers

APPLICANT'S BIRTHDATE: 1/13/48  SOCIAL SECURITY NUMBER: 417 62 0596  SPOUSE'S BIRTHDATE:  SOCIAL SECURITY NUMBER:  TELEPHONE NUMBER: (756 6239)

Has the applicant had any losses, insured or not, in the past three years (fire, crime, wind, etc.)? YES ☐ NO ☑

If YES, complete Loss section on the back

Number of residences in past three years: 2

Other coverage with State Farm: ☐ Auto ☐ Life ☐ Health

Prior insurance company: TRANSAMERICA PREMIER INS CO

POLICY NUMBER: 1FS4592 3351

Has applicant previously been insured by State Farm for Home Insurance (including tenants)? YES ☐ NO ☑  If YES, give most recent dates:

Has any insurer or agency cancelled or refused to issue or renew similar insurance to the named applicant or any household member within the past three years? YES ☐ NO ☑  If YES, give reason in Remarks

UNDERWRITING ONLY: 12/16/91

Specific occupation: APPLICANT: SUPERVISOR  SPOUSE:

Time with present employer: APPLICANT: 23  SPOUSE:

Is any business (including child care) conducted on the premises? YES ☐ NO ☑  If YES, explain in Remarks

Does applicant have any part-time or full-time residence employees? YES ☐ NO ☑  If YES, complete Work. Comp. section on the back

Year purchased: 89  Purchase price of dwelling: 64,000

Current market value $: 74,000

Approx. no. of hours dwelling is unoccupied each day: 0

JE 159

Is dwelling being remodeled? YES ☐ NO ☑  If YES, to what % completion?  Is remodeling done by a contractor? YES ☐ NO ☐

Any pets in the household? YES ☐ NO ☑

Type of locks on exterior doors: ☐ Spring ☑ Deadbolt  Other (describe in Remarks)

Home Alert Credit (from other side): 2

☐ Solar energy home  ☐ Dome home  ☐ Underground home  ☐ Log home

If there is a wood stove or furnace, coal stove or free standing fireplace anywhere on the property? YES ☐ NO ☑  Check list FE-083

Is dwelling within 1000 ft. of high tide of the ocean, gulf, bay, harbor, large open body of water, or located on an island? YES ☐ NO ☑  If YES, complete ☐ Coastal sec. on back

How long have you known the applicant? 6 mths yrs

DATE YOU SURVEYED PREMISES: 11/21/91

Protection class: 5  ☐ Protected ☐ Suburban  Fire ☐ District  Zone 48  Construction ☑ FRAME ☐ MSNRY/FRAME ☐ MASONRY (PERCENTAGE)  Row or end occupancy? YES ☐ NO ☑

Year built: 89  First occupied: 89  Occupancy: ☑ Owner ☐ Tenant ☐ Vacant  No. of roomers: 0

No. of units in fee: 1  Is this a new city area? ☐ Yes ☑ No  Is area now in city limits? ☐ Yes ☐ No  Distance to: Hydrant 500 Ft. Fire dept. 1 Mi. EAST A1A

Construction (for IV): ☐ Frame ☑ Masonry  Residence type: ☐ Pre-1943 ☑ Post-1940  Basic (post-1940 only): ☐ Std. 1 ☐ Std. 2  Servicing fire dept. area: 1600  Ground floor: ☐ 1 Story ☑ 1½ Story ☐ 2 Story ☐ Bi-level ☐ Tri-level

Basement: ☐ Post-1950 adjustment  Townhouse end adjustment: ☐ of common walls: 1  ☐ Slab  2½ or 3 story adjustment: ☐  End breezeways porches: ☐  ☐ Central A.C. ☐ 1½ Story ☐ Family room ☐ Add sq. ft. area

Finished bsmt. sq. ft. area:  ☑ Fireplace: ☐ hearths  No. of masonry chimneys:  Garages: ☐ 1 car ☑ 2 car  ☐ Attached garage ☐ Basement garage  ☐ Built in garage ☐ Partially ☐ Carport

Kitchen: ☐ package ☐ all of families  Multi family: ☐  Other features: ☐ Hot tub ☐ Patio with cover  ☐ Sauna  ☐ Solar water system  ☐ Wet bar ☐ stove  Finished attic, incl. sq ft area:  garage - sq. ft. area:

Hard ☐ Wood shingle ☑ Wood shake  ☐ Concrete tile ☐ Clay tile  Unfinished interior: ☐ level - sq ft area

☐ Describe any other features

FORMS 4 & 6 ONLY: ☐ YR. FORM 4 ☐ YR. FORM 6  Pers. prop. ☐ Luxury ☐ Economy ☐ Standard  CALCULATED VALUE ☐ Condo. unit. ☐ owner occupied ☐ # of days owner occupied ☐ # of days rented to others

☐ Describe in Remarks

Replacement cost: 72,250  BASIC R.C.: 3,500  ADJUSTMENT:  EXTRAS:  TENTATIVE R.C. 75,700  LOCAL FACTOR 96  TOTAL R.C. 72,672

Form: ☐ 1 ☐ 2 ☐ 3 ☐ 5 ☐ 6  Multi-Family Homeowners (Applicable?)  DATE & TIME OF APPLICATION: 11/27/91

Deductible: 250

☐ Jewelry and Furs (JF) (subtotal, list all items) ☐ $1000/2500 ☐ $1000/5000 (list in Remarks)

☐ Silverware Theft (SQ) (subtotal all items)

☐ Merchandise Samples (BA) (describe in Remarks) ☐ $2500 ☐ $5000

☐ Backup of Sewers and Drains Endorsement  Premium: 2.00

Dwelling or building property: 70,000

Total limit $:

Dwelling extension (total and incl. with Form (A))  9,000  248.00

☐ Replacement Cost – Contents (HC)  2700

☐ Costs dwelling have reasonably priced?

Personal property: 49,000  Actual Loss Sustained

☐ Firearms (FA)

☐ Incidental Business (IO) (describe in Remarks)

If YES, is coverage desired on vendor? ☐

Loss of use (add living expenses):  Actual Loss Sustained

☐ Business Pursuits (BU) (describe in Remarks)

☐ Home Computer (HC)

Condo loss assessment (Complete section on back):

Personal liability (each occurrence): $100,000  300,000

☐ Other ☐

TOTAL PREMIUM $ 2640 5  DEPOSIT PREMIUM $ 680 00

Medical payments to others (each occurrence): New

Acct. No. New

Mortgagee ☐ Loss Payee ☑  Named Agent Name and Address: COLTIME CREDIT CORPORATION

P.O. BOX 43200, B'ham AL 35243  LOAN NUMBER: 6308732

☐ 1st ☐ 2nd  Named Agent Name and Address: ☐

SR #:

Loan number: FIRE CO RECORDS

I understand that coverage is ☐ binding ☐ not binding under this application.

I hereby apply for the insurance indicated and represent that I have read both sides of this application and that statements herein are correct. I understand that the premium shown above must be in compliance with the Company's rules and rates and is subject to revision.

Applicant's Signature X [signature]

Agent's Code Stamp: DONNY HOLLEY 1520  MIKE DOUGLAS 9731

Date and Time of Application: Mo. 11 Day 21 Yr. 91  ☐ A.M. ☑ P.M. Hour: 2

FE-2540.30  Rev. 9-88

ALSO COMPLETE OTHER SIDE

SF- Finch

SF-00090

**HOME ALERT**

CHECK ALL THAT APPLY

☐ Fire or Smoke Detectors with digital or voice- synthesized telephone dialer

☑ Fire or Smoke / Local Alarm  ☐ Dead Bolt Locks  ☐ Fire Extinguisher  ☐ Burglar Alarm System  ☐ Fire/Burglar Alarm reporting to fire dept., police dept. or central station

**PERS. PROP.**

| Applicable value of the following pers prop: | | | | | | | | TOTAL AMOUNT OF LOSS |
|---|---|---|---|---|---|---|---|---|
| $5000.⁰⁰ | $1500.⁰⁰ | $500.⁰⁰ | — | $500.⁰⁰ | $1000.⁰⁰ | $2000.⁰⁰ | — | $1500.⁰⁰ |

DETAILS OF LOSS

**LOSSES**

| DATE OF LOSS | | | | $ |
|---|---|---|---|---|
| | None | | | $ |
| | | | | $ |
| | | | | $ |

**PETS**

Comment in the Remarks section on any pets which appear unfriendly or to have vicious tendencies. In addition, if there are any dogs in the household, complete the following three questions:

| | YES | NO | | | YES | NO |
|---|---|---|---|---|---|---|
| Ever bitten anyone? | | | If yes, explain in Remarks | | | |
| | | | | Trained or bred for attack or guard purposes? | | |

Breed:

**OVER 35 YRS**

COMPLETE FOR ALL YEARS OVER 35 YEARS OLD

| | | | | | | | YES | NO |
|---|---|---|---|---|---|---|---|---|
| | | Type | ☐ Cable ☐ Solar | ☐ Vented ☐ Unvented | Other (specify) | Fuel ☐ Gas ☐ Oil ☐ Coal ☐ Other (specify) | Thermostat controlled? | |
| Heating | Age | Yrs. | Type | ☐ Forced | | Size in BTUs | No of circuit breakers | Rating of Alarm box |
| Wiring | Age | Yrs. | Type | | | | | |

If yes, describe in Remarks: (1) extent of remodeling, (2) cost of improvements, and (3) individual or firm that did work. In the dwelling divided by the Residential Dwelling Credit?

| Has any remodeling been done? | YES | NO | | INSIDE | OUTSIDE | | INSIDE | OUTSIDE |
|---|---|---|---|---|---|---|---|---|

**WORK. COMP.**

| Number of employees | Hours worked per week (each employee) | Salary per quarter (each employee) | |
|---|---|---|---|

| Workers' Compensation Policy requested? | YES | NO | Workers' Compensation Contingency Endorsement requested? (not available in all states) | YES | NO |
|---|---|---|---|---|---|

If risk is within 1000 ft. at high tide of ocean, gulf, bay-harbor, or large open body of water, give reason for submission in Remarks and refer to Underwriting Guide for information required.

| If located on island, name of island | | | YES | NO |
|---|---|---|---|---|

**BILL. COND.**

If increased building and/or loss assessments is requested, is there a master policy in force for the building?

| Is master policy written on an all physical loss basis? | YES | NO | If no, explain in Remarks |
|---|---|---|---|

| RENEWAL BILLS: | Original – ☐ Insured ☐ Mortgagee | Copy – ☐ Insured ☐ Mortgagee | ENDORSEMENT BILLS: | Original – ☐ Insured ☐ Mortgagee | Copy – ☐ Insured ☐ Mortgagee |
|---|---|---|---|---|---|

**REMARKS**

SF- Finch    SF-00091







**SF- Finch**

SF-00092

 

FP-7955
(8/96)

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

**DECLARATIONS CONTINUED** . . . . . . . . . . . . . . . . .     1

**DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . .     1

**SECTION I - YOUR PROPERTY**
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . .     3
      Coverage A - Dwelling . . . . . . . . . . . . . . . . . .     3
      Coverage B - Personal Property . . . . . . . . . . . . .     3
      Coverage C - Loss of Use . . . . . . . . . . . . . . . .     4
      Additional Coverages . . . . . . . . . . . . . . . . . .     5
      Inflation Coverage . . . . . . . . . . . . . . . . . . .     7
   LOSSES INSURED . . . . . . . . . . . . . . . . . . . . .     7
   LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . .     9
   LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . .    11
   CONDITIONS . . . . . . . . . . . . . . . . . . . . . . .    13

**SECTION II - YOUR LIABILITY**
   COVERAGES . . . . . . . . . . . . . . . . . . . . . . . .    15
      Coverage L - Personal Liability . . . . . . . . . . . . .    15
      Coverage M - Medical Payments to Others . . . . . . . . .    15
      Additional Coverages . . . . . . . . . . . . . . . . . .    15
   EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . .    16
   CONDITIONS . . . . . . . . . . . . . . . . . . . . . . .    18

**SECTION I AND SECTION II - CONDITIONS** . . . . . . . . . .    19

**OPTIONAL POLICY PROVISIONS** . . . . . . . . . . . . . . . .    20

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983, 1992.

FP-7955
(8/96)

**SF- Finch**

SF-00093

Printed in U.S.A.

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you have not had any losses, insured or not; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

1

**SF- Finch**

SF-00094

FP-795

d.  with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5.  "**insured location**" means:

a.  the **residence premises**;

b.  the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c.  any premises used by you in connection with the premises included in 5.a. or 5.b.;

d.  any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e.  land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f.  individual or family cemetery plots or burial vaults owned by an **insured**;

g.  any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h.  vacant land owned by or rented to an **insured**. This does not include farm land; and

i.  farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

6.  "**motor vehicle**", when used in Section II of this policy, means:

a.  a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b.  a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by

or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c.  a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d.  any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b. or 6.c.

7.  "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a.  **bodily injury**; or

b.  **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8.  "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

9.  "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10.  "**residence premises**" means:

a.  the one, two, three or four-family dwelling, other structures and grounds; or

b.  that part of any other building;

where you reside and which is shown in the **Declarations**.

**SF- Finch**    SF-00095

FP-7955

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

   Dwelling includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises,** separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

### COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or

otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a guest or a **residence employee,** while the property is in any other residence occupied by an **insured.**

We cover personal property usually situated at an **insured's** residence, other than the **residence premises,** for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b. $1,000 on property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises.** This coverage is limited to $250 on such property away from the **residence premises.**

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

3

**SF- Finch**

FP-79

SF-00096

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

   (1) used solely to service the **insured location;** or

   (2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured.** We do cover property of roomers, boarders and other residents related to an **insured;**

g. property regularly rented or held for rental to others by an **insured.** This exclusion does not apply to

property of an **insured** in a sleeping room rented to others by an **insured;**

h. property rented or held for rental to others away from the **residence premises;**

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Re

4     **SF- Finch**   SF-00097                                     FF

Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

   The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

**SF- Finch**    FP-799

SF-00098

the amount we pay for the loss equals our limit of liability.

   (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

   (3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

   a. volcanic blast or airborne shock waves;

   b. ash, dust or particulate matter; or

   c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

11. **Collapse**. We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

   a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. hidden decay of a supporting or weight-bearing structural member of the building;

   c. hidden insect or vermin damage to a structural member of the building;

   d. weight of contents, equipment, animals or people;

   e. weight of ice, snow, sleet or rain which collects on a roof; or

   f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the

6

**SF- Finch**

SF-00099

FP-7955

loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

### INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverage A, Coverage B and, when applicable, Option ID will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

### COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft**, including self-propelled missiles and spacecraft.

6. **Vehicles**, meaning impact by a vehicle.

7. **Smoke**, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

9. **Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from home if the theft is committed by a person who is not an **insured**;

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

7

**SF- Finch**    SF-00100    FP-79

(3) from the part of a **residence premises** rented to others:

   (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

   (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

   (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

   (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

   (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

   (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

   (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

   a. to the system or appliance from which the water or steam escaped;

   b. caused by or resulting from freezing;

   c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

   d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

   a. caused by or resulting from freezing; or

   b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

   a. maintain heat in the building; or

   b. shut off the water supply and drain the system and appliances of water.

8    **SF- Finch**    FP-7955

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

**SF- Finch**

9

SF-00102        FP-79

n.  pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b.  **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c.  **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove

subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d.  **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.  **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.  **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a.  conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

**SF- Finch**

10

SF-00103              FP-7955

b. defect, weakness, inadequacy, fault or unsoundness in:

    (1) planning, zoning, development, surveying, siting;

    (2) design, specifications, workmanship, construction, grading, compaction;

    (3) materials used in construction or repair; or

    (4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

### COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

    a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

        (1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

        (2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

        (3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

        (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

    b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

    a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

        (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

        (2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or

11

**SF- Finch**

SF-00104    FP-7955

replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

## COVERAGE B - PERSONAL PROPERTY

1. **B1 - Limited Replacement Cost Loss Settlement.**

   a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

   (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

   (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have

actually and necessarily spent to repair or replace the property; and

(3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

b. We will pay market value at the time of loss for:

(1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

(3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement.**

   a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

   b. We will pay market value at the time of loss for:

   (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

   (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

   (3) property not useful for its intended purpose.

12

**SF- Finch**

SF-00105        FP-7955

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

(1) our cost to replace at the time of loss;

(2) the full cost of repair;

(3) any special limit of liability described in the policy; or

(4) any applicable Coverage B limit of liability.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

13          **SF- Finch**     FP-79

SF-00106

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause.** The word "mortgagee" includes trustee.

   a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      (2) pays on demand any premium due under this policy, if you have not paid the premium; and

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect. Proof of mailing shall be proof of notice.

   d. If we pay the mortgagee for any loss and deny payment to you:

      (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

      (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for

14    **SF- Finch**    FP-7955

SF-00107

a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered

under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

# SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises

out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**.

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

15

**SF- Finch**

SF-00108

FP-7

(3) $500 in any one **occurrence**.

c. We will not pay for **property damage**:

(1) if insurance is otherwise provided in this policy;

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

(a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

(1) which is either expected or intended by the **insured**; or

(2) which is the result of willful and malicious acts of the **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-**business** pursuits;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for the exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an office, school, studio or private garage;

(4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you oc-

cupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft;

(2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

(3) a watercraft:

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

16

**SF- Finch**

SF-00109          FP-7955

    (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

    (d) designated as an airboat, air cushion, or similar type of craft; or

    (e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f.  **bodily injury** or **property damage** arising out of:

    (1) the entrustment by any **insured** to any person;

    (2) the supervision by any **insured** of any person;

    (3) any liability statutorily imposed on any **insured**; or

    (4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g.  **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h.  **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against you or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i.  any claim made or suit brought against any **insured** by:

    (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

      (a) any **insured**;

      (b) any employee of any **insured**; or

      (c) any other person actually or apparently acting on behalf of any **insured**; or

    (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

      (a) any **insured**;

      (b) any employee of any **insured**; or

      (c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j.  **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a.  liability:

    (1) for your share of any loss assessment charged against all members of an association of property owners; or

    (2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b.  **property damage** to property currently owned by any **insured**;

c.  **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclu-

17

**SF- Finch**       FP-7

SF-00110

does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

a. give written notice to us or our agent as soon as practicable, which sets forth:

(1) the identity of this policy and **insured**;

(2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

(3) names and addresses of any claimants and available witnesses;

b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

c. at our request, assist in:

(1) making settlement;

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

18

**SF- Finch**

SF-00111                FP-7955

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

19

**SF- Finch**

SF-00112

FP-7955

(b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,**

20         **SF- Finch**         FP-7955
                    SF-00113

including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS**, item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

         owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

      (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture;

   f. rust, fouling or explosion of firearms;

   g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

21

**SF- Finch**

SF-00114

FP-7

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations**.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations**, we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations**, if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension,** item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and

incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS,** item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

   (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

   (3) to the rental or holding for rental of a residence of yours:

      (a) on an occasional basis for exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an incidental **business** or private garage;

   (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy

22

**SF- Finch**

SF-00115

FP-7955

one part and rent or hold for rental the other part; or

    (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

    (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

        (a) any **insured**;

        (b) any employee of any **insured**; or

        (c) any other person actually or apparently acting on behalf of any **insured**; or

    (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

        (a) any **insured**;

        (b) any employee of any **insured**; or

        (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. inherent vice; or

    d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

23        **SF- Finch**    SF-00116    FP-7

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

4. **Building Ordinance or Law Coverage Limitations.**

   a. We will not pay for any increased cost of construction under this coverage:

      (1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

      (2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

   b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

      (1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

      (2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

   c. We will not pay more under this coverage than the amount you actually spend:

      (1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

      (2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

**SF- Finch**

SF-00117                                      FP-7955

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has caused this policy to be signed by its President and Secretary at Bloomington, Illinois.

*Kim M. Brunner*                    Secretary            *Edward B Rust, Jr*            President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

**SF- Finch**

25            SF-00118            FP-79